**Evelyn HART, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–4213.

United States Court of Appeals, Ninth Circuit.

Sept. 11, 1986.

Jane Beyer, Lisa Brodoff, Puget Sound Legal Asst. Foundation, Tacoma, Wash., for plaintiff-appellant.

Kathryn A. Warma, Richard K. Willard, Gene S. Anderson, Christopher L. Pickrell, Patrick E. McBride, Seattle, Wash., for defendant-appellee.

Before TANG, PREGERSON and ALARCON, Circuit Judges.

## OPINION

TANG, Circuit Judge:

Evelyn Hart appeals from the judgment of the district court finding her ineligible for Supplemental Security Income (SSI) benefits. Under the Home Reinvestment Regulation, SSI recipients are able to sell their homes without jeopardizing their SSI eligibility if, within three months of receipt, they reinvest the proceeds from the sale into a replacement home. The Secretary found Hart's installment sales contract was a "proceed[ ]" from the sale of her former home with a cash value of $4,800, which was not reinvested within three months of receipt, and thus was not excludable under the Home Reinvestment Regulation, 20 C.F.R. § 416.1212(d) (1986). Hart argues that this interpretation of the Home Reinvestment Regulation is inconsistent with the plain meaning of the Home Exclusion Rule, 42 U.S.C. § 1382b(a)(1), and the legislative intent behind the SSI program. We agree.

## FACTS

Evelyn Hart is an 84–year old social security recipient who lives in her small home. At the time of the administrative hearing on this matter, she had no money in savings, but retained approximately $200 in her checking account.

On April 12, 1979, Mrs. Hart entered into a real estate contract for the sale of her former home. The total sale price of the former home was $15,000. The contract governing the transaction required a $2,000 down payment and payment of the remainder in monthly installments of $128.

One month later, on May 24, 1979, Hart entered into an agreement to purchase the one-story replacement home in which she currently lives. Mrs. Hart purchased this home for $15,000. The contract required a $3,500 down payment and payment of the remainder of the sale price in $125 monthly installment payments. She owns no other real property.

Mrs. Hart reinvested the down payment she received from the sale of her former home into the down payment on the purchase of her replacement home. Each month, Hart reinvests the $128 sale proceeds from her former home into the $125 monthly purchase payments for her replacement home.

The Secretary terminated Hart's SSI benefits when she moved into her replacement home in 1979. Hart did not appeal this determination. Instead, Hart reapplied for SSI benefits on April 12, 1983. The Secretary denied Hart's application that same day for the same reason she was terminat-

ed in 1979: the real estate installment contract from the sale of her former home constituted an excess resource. The Secretary determined that the contract, with a face value of $13,000, had a current market value of $4,800. On May 18, 1983, Hart filed a request for reconsideration. On August 10, the denial was affirmed. Hart then requested a hearing before an administrative law judge.

On November 14, 1983, a hearing was held before an administrative law judge in Seattle, Washington. In a decision issued on December 23, 1983, the administrative law judge found that the real estate contract held by Hart was an excess resource and upheld the Secretary's denial of Hart's application for SSI benefits. On February 20, 1984, Hart requested appeals council review of the decision. On April 13, 1984, the appeals council denied her request for review. Upon exhaustion of her administrative remedies, Hart filed a complaint in United States District Court. A hearing was held before a United States Magistrate. On August 23, 1985, the district court adopted the recommendation of the Magistrate and entered judgment affirming the final decision of the Secretary. Hart timely appeals.

## DISCUSSION

■ An agency's interpretation of its own regulations is entitled to considerable deference by the courts, unless the interpretation is unreasonable. *See, e.g., United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Sierra Club v. Clark,* 756 F.2d 686, 690 (9th Cir.1985); *McCoog v. Hegstrom,* 690 F.2d 1280, 1284 (9th Cir.1982). The inquiry into the reasonableness of the interpretation must involve an examination of the legislative intent behind the authorizing statute. *See Deukmejian v. United States Postal Service,* 734 F.2d 460, 462 (9th Cir. 1984) (per curiam) (quoting *McCoog,* 690 F.2d at 1284).

■ The SSI program is intended to provide financial assistance to "needy people" who are blind, disabled, or sixty-five years of age or older. H.R.Rep. No. 231, 92d

Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4989, 5012; *see* 42 U.S.C. § 1381. Individuals without eligible spouses who applied for SSI benefits before January 1, 1985, are ineligible if they have nonexcludable resources in excess of $1,500. 42 U.S.C. § 1382(a)(1)(B)(ii) and (3)(B) (1983 & Supp.1986); 20 C.F.R. § 416.-1205(a) (1986). The Social Security Act's Home Exclusion Rule, 42 U.S.C. § 1382b(a)(1) (1983), specifically allows needy people to receive SSI benefits *and* maintain a home. Congress reinforced this policy preference in 1976, when it amended the rule to eliminate the Secretary's discretion to limit the value of an excludable home. *See* Social Security Act, Pub.L. No. 94–569, § 1613(a)(1), 90 Stat. 2699, 2700 (1976) (amending 42 U.S.C. § 1382b(a)(1)); 20 C.F.R. § 416.1212(b) ("We do not count a home regardless of its value."). As Representative Harris stated in support of the amendment, "I think it ought to be [Congress'] policy to encourage people to try to retain their family home. We should not deny assistance to those in need who are otherwise eligible for SSI merely because they managed to obtain a home." 122 Cong.Rec. 27845 (1976).

■ The Home Reinvestment Regulation, 20 C.F.R. § 416.1212(d) (1986), further implements Congressional intent by allowing an otherwise qualified SSI applicant or recipient to maintain a home in the event he or she needs to replace a former home. Thus, the regulation is facially valid. *See Yuckert v. Heckler,* 774 F.2d 1365, 1369–70 (9th Cir.1986), *cert. granted,* — U.S. —, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986).

■ The Home Reinvestment Regulation excludes from resources the proceeds from the sale of a home "to the extent [the proceeds] are intended to be used and are, in fact, used to purchase another home ... within 3 months of the date of [their] receipt...." 20 C.F.R. § 1212(d) (1986). Resources are defined as:

> cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to

cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse).

20 C.F.R. § 416.1201(a) (1986). Liquid resources include cash or financial instruments convertible to cash, including stocks, bonds, mutual fund shares, promissory notes, mortgages and similar properties. 20 C.F.R. § 416.1201(b) (1986).

The Secretary argues, and Hart does not dispute, that Hart's installment sales contract had a cash value of $4,800 at the time Hart made the SSI application. The Secretary contends that the installment contract is, consequently, both a proceed and a liquid resource, the possession of which renders Hart ineligible for further SSI benefits. As a "proceed" of the sale, the installment contract must be liquidated and reinvested in a substitute home within three months of receipt or the home exclusion is lost.

Hart submits that the installment contract is not itself a "proceed" from the sale of the former home. She contends that she has fully complied with the regulation: (1) she has invested, in full and within three months of receipt, the cash downpayment she received from the sale of her former exempt home into her exempt replacement home, and (2) she continues to invest the monthly cash payment she receives from the sale of her former home, within three months of receipt of each payment, into her replacement home. If Hart is correct, the Home Reinvestment Regulation's requirements are met and entitlement to SSI benefits is maintained. Hart believes that the "proceeds" from the sale of the former home are limited to the original cash down payment and the monthly installment payments. So defined, these "proceeds" have been and continue to be reinvested in Hart's new home within three months of receipt. The installment contract merely represents Hart's right to receive the monthly payments.

The Secretary's interpretation of the regulation as applied in this situation is unreasonable because it contravenes the purpose behind the Home Exclusion Rule. Moreover, it works an unduly harsh result in the name of an otherwise valid and laudable regulation. Under the Secretary's interpretation of the regulation, Hart's options are limited to selling her home at below market value for cash or liquidating the real estate installment contract at a substantial loss. Both options jeopardize her opportunity to acquire or maintain a replacement home.

Both parties agree that the problem could have been avoided if Hart had been able to negotiate an assignment of her contract payments from the buyer of her former home to the seller of her replacement home. Under such an arrangement, Hart would no longer hold the real estate contract that the Secretary considers a nonexempt resource. However, not only does this option presume a high degree of legal sophistication on the part of the seller, but in reality does no more than formalize in writing the existing arrangement of reinvesting the contract payments in the replacement home.

Hart's interpretation of the regulation is reasonable because it carries out Congress' intent in creating the Home Exclusion Rule. As an initial matter, it is clear that the installment sales contract is a liquid resource: Hart possesses a financial instrument which is convertible to cash. See 20 C.F.R. § 416.1201(b) (1986); see also id. at § 416.1103(c) (what you receive from the sale or exchange of a resource is not income; it remains a resource). The relevant statute and regulations, however, nowhere define "proceeds." Thus, it appears that the Secretary, as Hart suggests, is free—and indeed compelled—to define proceeds from the sale of an exempt home as including not only the cash downpayment, but also the income stream realized (here, on a monthly basis) from the sale. So defined, these proceeds must be timely invested upon receipt in the replacement home.

Congress has expressly authorized the Secretary to "prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits." 42 U.S.C. § 1382b(b) (1983). The installment sales contract—or any similar replacement home financing arrangement—is therefore property which may be suitably disposed of through the timely investment of the monthly income stream (the proceeds) it generates. The contract itself, however, merely represents the owner's right to receive these proceeds. To the extent the contract has any additional real value as a resource to the SSI recipient, this value is fairly viewed as part of the value of the replacement home, the full value of which is excludable. *See* 20 C.F.R. § 416.1212(b) & (d). This interpretation of the regulation comports not only with Congressional intent, but also with reality. The fact must be acknowledged that many SSI applicants and beneficiaries are simply unable to negotiate cash sales of their homes.

The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.