## OREGON NATURAL RESOURCES COUNCIL and Umpqua Valley Audubon Society, Plaintiffs,

v.

## Robert J. DEVLIN, et al., Defendants.

## Civ. No. 90–6391–HO.

United States District Court,
D. Oregon.

Aug. 20, 1991.

---

Derek C. Johnson, Johnson Clifton Larson & Bolin, Eugene, Or., Gary Keith Kahn, Reeves & Kahn, Portland, Or., Todd D. True, Corrie J. Yackulic, Victor M. Sher, Adam J. Berger, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiffs.

Thomas C. Lee, U.S. Attys. Office, Val Black, Sp. Asst., U.S. Atty., Portland, Or., for defendants.

## AMENDED ORDER

MICHAEL R. HOGAN, United States Magistrate Judge.

This is an action for declaratory judgment and injunctive relief against the Forest Service and its employees (Forest Service). Plaintiffs challenge the Forest Service's decision to offer the Calapooya II Timber Sale on the North Umpqua Ranger District of the Umpqua National Forest, without examining or discussing the vegetation management strategy of prevention. In October 1988, the Umpqua National Forest prepared an environmental assessment (EA) and proposed the Mayflower and Calapooya timber sales. On October 20, 1988, after the completion of the environmental assessment, the forest supervisor issued a decision notice (DN) and finding of no significant impact (FONSI). Plaintiffs had 45 days to appeal, but did not do so. 36 CFR 211.18. On July 20, 1990, the Forest Service advertised the Calapooya timber sale for public auction. The auction, however, was cancelled when the Forest Service was informed of new information regarding watershed, soils, and fisheries near portions of the Calapooya timber sale. The Forest Service supplemented the October 20, 1988, DN and modified the Calapooya timber sale resulting from this new information, renaming the sale "Calapooya II." The Calapooya II sale was again advertised for public auction on August 31, 1990. The supplement to the DN was subject to administrative appeal on the watershed, soils, and fisheries matters. Plaintiff ONRC filed its

appeal on a broad range of issues beyond watershed, soils and fisheries. Due to the filing of this action, the Forest Service dismissed the appeal without ruling pursuant to 36 CFR 217.20(c)(6).

Plaintiffs claim that the failure to examine or discuss vegetation management strategy prior to completion of the October, 1988, environmental assessment violated the National Environmental Policy Act (NEPA), the agency's own regulations and guidelines, and the Administrative Procedure Act (APA). On September 21, 1990, plaintiffs filed a motion for summary judgment and permanent injunction against the Calapooya II timber sale. (# 3). On October 26, 1990, defendants stated:

> ... Without admitting liability as to the single claim of plaintiffs' complaint, the Forest Service has decided that it will perform and document an analysis of prevention strategies for vegetation management for the Calapooya II timber sale, and will evaluate that analysis upon its completion. During the time the analysis is being prepared and while the evaluation is conducted, the Forest Service will withhold the award of the contract for the Calapooya II timber sale. . . .

(Motion for Stay of all Proceedings, # 21).

The Forest Service prepared a vegetation management analysis (VMA) dated November 28, 1990. The Forest Service has filed a cross motion for summary judgment (# 33).

## DISCUSSION

Plaintiffs argue that the October, 1988, environmental assessment was not sufficient under NEPA, because defendants did not consider the vegetation management strategy of prevention. They argue that the Forest Service's post hoc vegetation management analysis did not remedy the deficient environmental assessment, because decisionmakers and the public were not adequately informed of the full effect of the proposed sale including the vegetation management strategy of *prevention* and because it failed to re-examine the initial decision which was based on an inad-

equate analysis. They also argue that the Forest Service's own record of decision (ROD), final envionmental impact statement (FEIS), and Guide required consideration of the strategy of prevention in vegetation management in the original EA and constitute substantive rules by which the agency intended to bind itself. Plaintiffs argue the Forest Service violated NEPA and its own substantive rules because it refused to vacate the October 20, 1988, DN and FONSI and begin the NEPA procedure anew when it considered vegetation management strategy. The Forest Service argues that it was not required to conduct a vegetation management analysis in order for the October, 1988, environmental assessment to be sufficient, that the post hoc vegetation management study of November 28, 1990, cured any alleged substantive or procedural defects in the October, 1988, environmental assessment, that the conclusion of the vegetation management analysis was that there was an "absence of significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts," and that due to this result there is no need to complete any further NEPA procedures.

The parties agree that the appropriate standard for judicial review of the Forest Service's actions is "arbitrary and capricious" as set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706.

## FAILURE TO PURSUE ADMINISTRATIVE APPEAL

Plaintiffs argue that the October, 1988, environmental assessment was not sufficient, because defendants did not consider the vegetation management strategy of prevention. They argue that NEPA and Forest Service guidelines require that a VMA with a preference for prevention strategies be prepared at the beginning of the planning process, when the agency decisionmaker retains the maximum range of options, citing *Conner v. Burford,* 848 F.2d 1441, 1446 (9th Cir.1988), *cert. den.,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). The Ninth Circuit in *Conner,* however, considered the appeal of a FONSI

after an EA had been filed. It specifically considered whether the prior sale of oil and gas leases within two forests constituted "irreversible and irretrievable commitment" of forest land to activities that could have a significant impact on the environment. 848 F.2d at 1446. The facts in the present action are distinguishable.

Plaintiffs concede they did not file a timely appeal of the initial planning of the Calapooya sale, including the original October 20, 1988, DN, FONSI, and EA, and the Forest Service has not auctioned the Calapooya sale. Plaintiffs further argue that only by integrating the VMA with the initial planning of a sale can this court ensure "that bureaucratic and financial momentum will not impair the consideration and utilization of prevention techniques," *citing Save the Yaak Comm. v. Block*, 840 F.2d 714, 718 (9th Cir.1988). In *Save the Yaak, supra*, reconstruction contracts were awarded prior to preparation of EAs, and by the time the biological assessment (BA) was prepared, construction had already begun. The Ninth Circuit held that the BA could not substitute entirely for an EA and that if only a BA were prepared there may be gaps in the agency's environmental analysis. The Ninth Circuit held that even considering the EA and BA together, the environmental analysis still had gaps because certain specific environmental aspects were not evaluated in either document. I find that plaintiffs reliance on *Save the Yaak* is misplaced. In the present action, plaintiffs are not claiming that the original EA with the VMA contained any specific gaps in the environmental analysis or that the Calapooya sale had been awarded prior to the preparation of these documents.

Defendants argue that plaintiffs "waived" their opportunity to appeal on the ground that the October, 1988, environmental assessment was not sufficient by failing to file a timely administrative appeal. Again, plaintiffs concede they did not file a timely appeal of the original October 20, 1988, DN and FONSI, but argue that defendants' decision to supplement that DN and FONSI, in August, 1990, on other grounds constituted a new decision requir-

ing a reopening of all issues concerning the proposed sale, citing *Oregon Natural Resources Council v. U.S. Forest Service*, 834 F.2d 842, 847 (9th Cir.1987). In *Oregon Natural Resources Council v. U.S. Forest Service, supra*, the issue was whether plaintiff was entitled to an administrative review of the Forest Service's decision to reoffer a returned timber sale when it had not timely appealed the original environmental assessment. The Ninth Circuit held that it was not appropriate for the Forest Service to deny administrative review of the reoffered sale solely because plaintiffs had not timely appealed the original sale decision. The Ninth Circuit also stated that plaintiffs who have a full and fair opportunity to administratively appeal an agency's preparation of an EA, but who fail to do so, are not entitled to a second chance to administrative or judicial review unless they allege changed circumstances or environmentally significant modifications made by the Forest Service after the timber sale was returned. 834 F.2d 846. The Ninth Circuit remanded to the FS for administrative review of these issues.

In the present action, it is undisputed that defendants' decision to supplement the October, 1988, DN and FONSI was subject to an administrative appeal and that the public was properly notified of this right. Plaintiffs, in fact, filed an administrative appeal. However, defendants were required to close and dismiss the appeal without a decision on the merits pursuant to 36 C.F.R. § 217.20(c)(6), because plaintiffs filed this action. I find that even if Calapooya II was a new sale, plaintiffs had a full and fair opportunity to administratively appeal that decision, but chose not to do so. Plaintiffs have not alleged defendants made environmentally significant modifications after the original Calapooya sale was returned. Plaintiffs cite the administrative record (AR 686–87) and argue generally that the Calapooya II sale had different boundaries, road construction requirements, environmental impacts and mitigation measures than the original sale. They argue that "there is no telling what alternative sale configurations, such as differ-

ent boundaries or selective cutting, defendants foreclosed by planning and offering the sale *prior* to preparation of the VMA." (Plaintiffs' Response to Defendants' Motion for Reconsideration and Notice to Reinstitute Motion for Summary Judgment and Permanent Injunction, # 67). The August, 1990, supplement to the DN and FONSI reflects that Unit 2 including the harvest and road construction would be deleted, that a slide area in Unit 5 would be deleted and that a road would be reclassified as a temporary spur road; that there would be minor boundary changes in Unit 3 and an additional no-cut stability buffer along a slide, that a stream in Unit 1 would be reclassified to add a no-harvest riparian area on each side. Plaintiffs have not alleged or argued that these modifications were environmentally significant with respect to a vegetation management strategy of prevention. Therefore, I find that plaintiffs are not entitled to judicial review of the October 1988, DN, FONSI, and EA or the August, 1990 supplement to the decision notice and finding of no significant impact, as a matter of law.

## PUBLIC PARTICIPATION IN AGENCY DECISIONMAKING

▪ Public notice and participation is integral to the goals of NEPA to provide information to agency decisionmakers and to facilitate public involvement in agency decisionmaking. *Friends of Walker Creek Wetlands, Inc. v. Bureau of Land Management*, 19 ELR 20852 (D.Or.1988). Publication of NEPA documents to the public serves an informational role. It gives the public the assurance that the agency "has indeed considered environmental concerns in its decisionmaking process and, perhaps more significantly, provides a springboard for public comment." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989). The preparation of environmental documents must be timely. An assessment must be "prepared early enough so that it can serve practically as an important contribution to the decisionmaking process and will not be used to rationalize or justify decisions already made." 40 CFR § 1502.5 (1987); *Save the Yaak Committee v. Block*, 840 F.2d 714 (9th Cir.1988). However, the public comment process is not essential every time new information comes to light after a NEPA document is prepared. *State of Cal., etc. v. Watt*, 683 F.2d 1253 (9th Cir. 1982). A plaintiff must identify additional relevant information that would have been provided to the agency in order to succeed on a claim of failure to provide a public comment period. *Sabine River Authority v. United States Dept. of Interior*, 745 F.Supp. 388 (E.D.Tex.1990). Documents prepared by the Forest Service also support public participation in agency decisionmaking. (See, Record of Decision Managing Competing and Unwanted Vegetation Final Environmental Impact Statement (ROD), AR at 781; A Guide to Conducting Vegetation Management Projects in the Pacific Northwest Region (Guide), AR at 845–852).

Plaintiffs in this action do not challenge the procedural steps taken by the Forest Service in developing the October 1988, environmental assessment. It is undisputed that plaintiffs and other groups objected to the Calapooya II timber sale by protest letter dated April 2, 1990. AR at 605. Extensive public participation followed. AR at 1–65. Plaintiffs were notified on July 10, 1990, that the Calapooya sale was going forward. AR at 596–599. There was additional public participation during the final review of the sale. AR at 632–654. I find that it is undisputed that the Forest Service met NEPA requirements as well as its own agency policies in providing public notice and comment on the Calapooya II timber sale.

Plaintiffs argue that "[t]he absence of an opportunity for public notice and comment on the VMA [Vegetation Management Analysis] violated both NEPA and the agency's own rules on vegetation management...." (Plaintiffs' Reply in support of Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment, # 46 at 22). Defendants, however, have presented uncontroverted evidence that:

(1) On January 14, 1991, the Roseburg NEWS–REVIEW published the Forest Service's notice soliciting public comment on the VMA. (Memorandum in Support of Defendants' Motion for Reconsideration, # 57, Attachment 2; Decl. of William Fish, # 59).

(2) The Forest Service sent letters directed to James Kauppila (of Umpqua Valley Audubon Society; AR at 631), to Oregon Natural Resources Council, and to Sierra Club Legal Defense Fund, counsel for plaintiffs in this action, soliciting their comments. (*Id.*, Attachments 3–5; Decl. of William Fish, # 59). Similar letters were sent to other interested persons and groups.

(3) The Forest Service did not receive any comments on the VMA as a result of this solicitation of public comments. (Decl. of William Fish, # 59).

Plaintiffs argue that their failure to comment on the VMA is not fatal to their case, citing *City of Davis v. Coleman,* 521 F.2d 661, 678 (9th Cir.1975). In *City of Davis, supra,* plaintiff was unrepresented by outside counsel and received a document marked "for your information," not indicating that comments were solicited or that the decision not to file an EIS was open for challenge in court. The Ninth Circuit noted that in 1971, judicial interpretation and critical commentary were just beginning to appear and that in light of these circumstances there was no evidence that plaintiff "slept on its rights." In contrast, plaintiffs in the present action are represented by experienced environmental attorneys who were specifically informed of the Forest Service's solicitation for public notice and comment for the VMA. I find that the only evidence is that the Forest Service did follow agency guidelines and NEPA requirements by involving the public throughout the decisionmaking process concerning the Calapooya sale and in considering the VMA. In addition, plaintiffs have failed to identify any deficiency in the vegetation management analysis that would be revealed by submitting it to further public comment.

## VIOLATIONS OF ALLEGED SUBSTANTIVE RULES

It is undisputed that:

(1) On December 8, 1988, a Record of Decision (ROD) for the Pacific Northwest Region's Final Environmental Impact Statement (FEIS) on Managing Competing and Unwanted Vegetation was issued. AR at 804.

(2) In February 1990, the Pacific Northwest Region issued "A Guide to Conducting Vegetation Management Projects in the Pacific Northwest Region" (Guide). AR at 805–870.

Plaintiffs allege that the December, 1988, ROD and the February 1990, Guide require the Forest Service to cancel the Calapooya II sale. (Complaint, # 1, ¶¶ 9–11).

"[N]ot all agency policy pronouncements which find their way to the public can be considered regulations enforceable in a federal court." *Rank v. Nimmo,* 677 F.2d 692, 698 (9th Cir.1982) *quoting Chasse v. Chasen,* 595 F.2d 59, 62 (1st Cir.1979). In order to have the "force and effect of law," the agency pronouncement must (1) prescribe substantive rules— *not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements. *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). The first requirement is for the rule to be legislative in nature, affecting individual rights and obligations. The second requirement is that the agency must have promulgated the rules pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress. *United States v. Fifty-Three (53) Eclectus Parrots,* 685 F.2d 1131, 1136 (9th Cir.1982). Where an agency activity merely reminds parties of existing duties, it is interpretive and not legislative. *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037 (D.C.Cir.1987). Manual provisions and internal agency guidelines for implementing statutes are generally not binding on agencies. See, *Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S.Ct. 1468, 1471, 67

L.Ed.2d 685 (1981); *American Hospital Ass'n v. Bowen*, 834 F.2d 1037 (D.C.Cir. 1987); *Hi–Ridge Lumber Co. v. United States*, 443 F.2d 452, 455 (9th Cir.1971) (Forest Service manual held not enforceable).

■■■ The December, 1988, ROD for the Final Environmental Impact Statement states that it "establishes policy and direction for subsequent site-specific environmental analysis." AR at 778. It further states that vegetation management is not a program with its own end. AR at 785. I find this is evidence that the directions in the ROD to consider prevention strategies do not stand as a separate obligation, but are intertwined with specific projects, i.e., the Calapooya timber sale. It states that the decisions in the EIS are to be incorporated into forest plans. AR at 803. It is undisputed that plaintiffs have not challenged the forest plan of the Umpqua National Forest in this action. The only challenge is to the proposed project in offering the Calapooya II sale.

The stated purposes of the Guide are to summarize certain existing documents and information to explain new concepts and to include "real life" examples. AR at 808. Chapter I of the Guide concerns site-specific environmental analysis. AR 812. It expressly states that "[t]his chapter provides guidelines and suggestions for site-specific environmental analysis of vegetation management projects." It also sets forth "reminders" to Forest Service project managers concerning public involvement in planning and carrying out projects. AR at 849.

Plaintiffs cite an alleged example of a substantive rule contained in the Guide, i.e., "Consideration of the prevention strategy is required in all environmental analyses where there is a potential for future vegetation management.... It must be determined whether there are management alternatives for part of the treatment sequence that, if employed, could reduce the need for the future vegetation management." AR at 827. This quote is contained in the chapter concerning "guidelines and suggestions" and is in a section which summarizes the substance of a medi-

ated agreement in *Northwest Coalition For Alternatives To Pesticides v. Lyng*, 673 F.Supp. 1019 (D.Or.1987). This mediated agreement, by its terms, applies only to the parties in the *Lyng* case. See, AR at 887, and Opinion, (# 78) in *Citizens Interested In Bull Run, Inc., et al. v. Edrington, et al.*, Civil No. 90–844–MA, (D.Or. June 20, 1991).

I find that neither the ROD or the Guide purport to create actionable rights. I find that the vegetation management strategy of prevention is not mandated by statute, and was not promulgated in the Federal Register and codified in the Code of Federal Regulations. I find that the only evidence presented is that the Forest Service intended the ROD and Guide to be general policy statements, internal management directives and administrative tools for use by Forest Service personnel. I find that plaintiffs have not raised a question of fact concerning the Forest Service's alleged intent that the ROD and Guide include substantive rules.

■■■ Defendants also argue that even if the ROD and Guide were considered to include substantive rules, they would not apply to the Calapooya timber sale in this action, because they are limited to NEPA decisions made after December 8, 1988. The Guide provides, in relevant part:

> If your project NEPA decision was made before Dec. 8, 1988, the legal "reopening" of the original decision is not required. The vegetation management aspect of the project, however, should be reviewed for compliance with the ROD....

AR at 818.

The Guide defines NEPA decision as including a FONSI for an EA. AR at 817. It is undisputed that the date of the original EA and FONSI for the Calapooya timber sale was October 1988. Plaintiffs argue that because the Supplement to the DN and FONSI for the Calapooya II timber sale was dated August 30, 1990, the provisions of the ROD and Guide concerning the vegetation management strategy of prevention applied. It is undisputed, however, by the terms of the supplemental DN and FONSI that it was a response to new

information concerning watershed, soil, and fisheries issues for the Calapooya sale which had already been planned. The ROD states that the "planning stage for any project (such as timber harvest, road construction or range improvement) is the most appropriate time for implementing a prevention strategy." AR at 782. The Forest Service interpreted its ROD as not having retroactive effect on projects that were planned prior to its issuance. AR at 764, Interim Instructions of July 1989. The Forest Service's interpretation of its own ROD, even if viewed as a regulation, is entitled to deference. *Hart v. Bowen,* 799 F.2d 567, 569 (9th Cir.1986); *Medberry v. Hegstrom,* 786 F.2d 1389, 1391 (9th Cir. 1986); *Sierra Club v. Clark,* 756 F.2d 686, 689 (9th Cir.1985). I find that defendants were not required to address and analyze the provisions of the ROD and the Guide for the Calapooya timber sale because the planning decision to offer the sale was made prior to December 8, 1988.

## PROCEDURE AND MERITS OF VMA

■■■■ NEPA does not specify when a supplement to an environmental impact statement or assessment must be filed. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 370–371, 109 S.Ct. 1851, 1857, 104 L.Ed.2d 377 (1989). Not every new circumstance requires filing a new supplemental environmental impact statement or assessment or reopening a prior decision. An agency may evaluate new information in a supplemental report, without reopening the environmental assessment process for the project at issue. *See, Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). The United States Supreme Court in *Marsh, supra,* held that federal agencies must apply a "rule of reason" and prepare a supplemental EIS if there "are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Id.,* 109 S.Ct. at 1858. The "rule of reason" turns on the value or significance of the new information to the pending decisionmaking process. *Id.,* at 1859. The new circumstance must present

a *seriously* different picture of the environmental impact of the proposed project from what was previously envisioned. *Sierra Club v. Froehlke,* 816 F.2d 205, 210 (5th Cir.1987) (emphasis in original). This requires agencies to take a "hard look" at the environmental effects of the planned action even after the action has received initial approval. The fact that the agency made a new report public after developing an EA or EIS supports a holding that it carefully considered the information and its impact before concluding that a supplementary NEPA document was unnecessary. *See, State of Cal., etc. v. Watt,* 683 F.2d 1253, 1268 (9th Cir.1982). Again, judicial review of an agency decision not to supplement an EIS or EA is controlled by the "arbitrary and capricious" standard of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). *Marsh v. Oregon Natural Resources Council,* 109 S.Ct. at 1860.

■■■ In the present action, the October, 1988, EA did include a silvacultural prescription for the sale. This prescription reveals the Forest Service's concern for competing vegetation. The prescription states:

> Broadcast burning or some other means of vegetation control [e.g. herbicide spraying] will be necessary to give the seedlings a head start over the brush on some of the units. Burning may also be necessary to provide planting spots. The units identified that may have brush problems or slash problems are scheduled to be broadcast burned.
> Silvacultural Prescription (Exh. E to Yackulic Decl., p. 22).

The "Resource Input" report, included in the Environmental Assessment, also indicates the Forest Service's expectation that it will need to treat the logged site to control competing vegetation. *Id.,* at 35.

The November 28, 1990, VMA considered the analysis of the vegetation management strategy of prevention. The document reveals that prevention strategies such as early broadcast burning, biological control by means of early planting, and prevention for road right-of-ways by grass seeding are feasible and have been adopted for site-

specific units in the Calapooya II timber sale. AR at 908. I find that the Forest Service's evaluation conforms to the formula for such analyses outlined in the Guide and ROD.

The Vegetation Management Analysis was performed to ascertain whether there was additional information of such import that the environmental review process should be reopened. The Forest Service addressed NEPA's objective of determining whether future vegetation management might cause environmental damage. It did not discover any remarkable information on the subject. AR 906, 162, 723, 726. The Forest Service found: "Proposed vegetation management will not result in significant changes to the integrity of natural ecosystems nor will it significantly reduce species diversity." AR at 909. I find that to the degree the Vegetation Management Analysis contains new information, there is an absence of "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." I find that the Forest Service properly performed the vegetation management analysis without reopening the decision to offer the sale. Plaintiffs have not identified any specific substantive defects in the Vegetation Management Analysis. I find that the Forest Service did not act arbitrarily or capriciously in deciding that no further NEPA procedure was required.

INJUNCTIVE RELIEF

Plaintiffs argue that they are entitled to injunctive relief as a matter of law because no post hoc vegetation management analysis could rehabilitate the initial October 1988, decision to offer the Calapooya sale. However, it is not appropriate to order injunctive relief regarding a project if the agency corrects violations of NEPA or agency regulations prior to implementation of the project. *Realty Income Trust v. Eckerd*, 564 F.2d 447, 456 (D.C.Cir.1977); *National Forest Preservation Group v. Butz*, 485 F.2d 408, 412 (9th Cir.1973) (where there has been no prejudicial failure to comply with NEPA, requiring the agency to perform a sterile exercise

would serve no useful purpose). Relief under NEPA must be tailored to remedy the particular violation and courts are not to issue injunctions as prophylactic or punitive measures. *Realty Income Trust*, 564 F.2d at 456–457. Where the problem is simply one of timing, injunctive relief as to the entire project would serve no remedial purpose. *Id.*

In the present action the VMA was prepared after the decision on the timber sale, but before award of the contract and the logging. I find that even if the VMA was required for the Calapooya sale, plaintiffs have not identified any specific substantive defects. The document provides undisputed evidence that no changes in the sale are necessary. Accordingly, an injunction would not provide a remedy here.

CONCLUSION

Defendants' motion for reconsideration (# 56) of the June 7, 1991, order is allowed and order (# 55) is vacated. Plaintiffs' motion for summary judgment and permanent injunction against the Calapooya II timber sale (# 3) and notice to reinstitute this motion (# 67) are denied. Defendants' cross motion for summary judgment (# 33) is allowed, and this action is dismissed.