756 F.2d 686
 22 ERC 1748, 15 Envtl. L. Rep. 20,319
 SIERRA CLUB, Desert Protective Council, California Native
Plant Society, Plaintiffs-Appellants,
v.
William P. CLARK, Secretary of the Interior, et al.,
Defendants-Appellees,
American Motorcyclist Association, etc., Sports Committee,
District 37 A.M.A., Inc, etc., Intervenors-Appellees.
 No. 83-6378.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 3, 1984.
Decided March 25, 1985.
As Corrected March 29, 1985.
 
 Laurens H. Silver, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., for plaintiffs-appellants.
 Robert E. Hinerfeld, David Elson, David A. Juhnke, Murphy, Thornton, Hinerfeld, & Elson, Los Angeles, Cal., Robert L. Klarquist, Dept. of Justice, Lands Division, Washington, D.C., for appellees.
 Appeal from the Judgment of the United States District Court for the Central District of California.
 Before GOODWIN, FARRIS and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Plaintiffs Sierra Club, Desert Protective Council and California Native Plant Society ("Sierra Club") filed this action seeking judicial review under the Administrative Procedure Act, 5 U.S.C. Sec. 706(1), of the failure of defendants Secretary of the Interior, Director of the Bureau of Land Management ("BLM"), and California State Director of BLM ("Secretary") to close Dove Springs Canyon to off road vehicle ("ORV") use. Sierra Club appeals from the district court's denial of their motion for summary judgment, and the grant of the Secretary's cross-motion for summary judgment. We affirm.
 
 FACTS
 
 2
 Dove Springs Canyon is located in the California Desert Conservation Area ("Desert Area"), established in 1976, 43 U.S.C. Sec. 1781, under the Federal Land Policy Management Act ("the Act"), 43 U.S.C. Sec. 1701 et seq. The Desert Area covers approximately 25 million acres in southeastern California, approximately 12.1 million of which are administered by the BLM. Dove Springs Canyon is comprised of approximately 5500 acres; 3000 acres are designated "open" for unrestricted use of ORVs.
 
 
 3
 Dove Springs Canyon possesses abundant and diverse flora and fauna. Over 250 species of plants, 24 species of reptiles, and 30 species of birds are found there. It also offers good habitat for the Mojave ground squirrel, the desert kit fox, and the burrowing owl. Because the rich and varied biota is unusual for an area of such low elevation in the Mojave Desert, the Canyon was once frequented by birdwatchers and naturalists, as well as hikers and fossil hunters.
 
 
 4
 Recreational ORV usage of Dove Springs Canyon began in 1965 and became progressively heavier in the ensuing years. By 1971, the Canyon was being used intensively by ORV enthusiasts. It became especially popular because the site's diverse terrain, coupled with relatively easy access, provides outstanding hill-climbing opportunities. By 1979, up to 200 vehicles used the Canyon on a typical weekend; over 500 vehicles used it on a holiday weekend. In 1973, the BLM adopted its Interim Critical Management Program for Recreational Vehicle Use on the California Desert ("Interim Program") which designated Dove Springs Canyon as an ORV Open Area, permitting recreational vehicle travel in the area without restriction.
 
 
 5
 Extensive ORV usage has been accompanied by severe environmental damage in the form of major surface erosion, soil compaction, and heavy loss of vegetation. The visual aesthetics have markedly declined. The character of the Canyon has been so severely altered that the Canyon is now used almost exclusively for ORV activities.
 
 
 6
 In July of 1980 Sierra Club petitioned the Secretary of the Interior to close Dove Springs Canyon to ORV use under the authority of Executive Order No. 11644, as amended by Executive Order No. 11989, and 43 C.F.R. Sec. 8341.2 because of "substantial adverse effects" on the vegetation, soil and wildlife in the Canyon. The Secretary responded that the matter would be addressed in the California Desert Conservation Plan and Final Environmental Impact Statement ("the Final Plan").
 
 
 7
 The Final Plan approved by the Secretary in December 1980 maintained unrestricted ORV use in Dove Springs of 3000 of the 5500 acres. Sierra Club filed this action on January 6, 1981, alleging that the Secretary's failure to close Dove Springs violated Executive Order No. 11644, as amended by Executive Order No. 11989, and 43 C.F.R. Sec. 8341.2; 43 U.S.C. Sec. 1732(b), which requires the Secretary to prevent "unnecessary or undue degradation of the lands;" and 43 U.S.C. Secs. 1781(b) and (d), which require the Secretary to maintain and conserve resources of the Desert Area under principles of "multiple use and sustained yield." Sierra Club sought declaratory relief and a writ of mandate compelling closure.[1]
 
 
 8
 On cross-motions for summary judgment the district court ruled in favor of the Secretary.
 
 DISTRICT COURT RULING
 
 9
 The district court characterized Sierra Club's complaint as a challenge only to the "initial" designation of the Canyon under the 1980 Final Plan. The court said that Sierra Club had not alleged that ORV use has caused considerable adverse effects since the Plan's adoption, and although the complaint alleged that the failure to close the Canyon was in violation of the Executive Orders and the Regulation, the factual predicate for this claim antedated the adoption of the Plan. The court ruled that "[w]hatever may have been the merits of plaintiff's claim prior to the Plan's adoption, [the] controversy was mooted by the Secretary's and BLM's exercise of discretion under [the Act] to make the designation in the Plan...."
 
 
 10
 The court declined to rule whether the Regulation and the Executive Orders apply to the Plan where it is alleged that ORV use has caused considerable adverse effects since the Plan's adoption. It also ruled separately that there was no abuse of discretion by the agency in designating the Canyon for ORV use under the broad mandate of the Act, 43 U.S.C. Sec. 1732(b) (unnecessary and undue degradation standard).
 
 STANDARD OF REVIEW
 
 11
 We will affirm a grant of summary judgment where, viewing the evidence in the light most favorable to the party against whom it is granted, we find that no genuine issue of material fact exists, and that the prevailing party is entitled to judgment as a matter of law. Sawyer v. Sonoma County, 719 F.2d 1001, 1003 (9th Cir.1983).
 
 ANALYSIS
 
 12
 The district court ruled that the plaintiffs' complaint was an attack upon the Canyon's initial designation as an "ORV freeplay area" in the Final Plan, and refused to address plaintiffs' contention that the Executive Orders and the Regulation required closure of the area after the Final Plan was adopted. Paragraphs 24 and 25 of plaintiffs' complaint do challenge the designation as violating 43 U.S.C. Sec. 1732(b) and 43 U.S.C. Sec. 1781(b) and (d). Paragraph 23, however, clearly alleges that defendants' failure to close Dove Springs Canyon to all ORV activity violates Executive Order No. 11989 and 43 C.F.R. Sec. 8341.2. Moreover, Paragraphs 9, 10, 13 and 18 allege that ORV use will continue to cause adverse effects in Dove Springs Canyon in the future. Thus, plaintiffs properly raised this issue in their pleadings and the trial court erred in refusing to address it.
 
 
 13
 The district court also ruled that the Secretary's and BLM's exercise of discretion under the Act in designating the Canyon as open mooted the plaintiffs' claim. The plaintiffs in the district court and on appeal contend, however, that the closure standard contained in the Executive Orders and the Regulation applies independently of the designation process. The plain meaning of the provisions supports their view.
 
 The Regulation provides:
 
 14
 Notwithstanding the consultation provisions of Sec. 8342.2(a), where the authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects ... the authorized officer shall immediately close the areas or trails affected.... Such closures will not prevent designation ..., but these lands shall not be opened to the type(s) of off-road vehicle to which it was closed unless the authorized officer determines that the adverse effects have been eliminated and measures implemented to prevent recurrence.
 
 
 15
 43 C.F.R. Sec. 8341.2(a). This provision creates a separate duty to close without regard to the designation process; it does not automatically become inoperative once the Secretary exercises his discretion to designate the land.
 
 
 16
 The district court erred in its analysis and conclusion that the Secretary's designation mooted the Sierra Club's claims. Nevertheless, we do not reverse the district court on account of this error because we must affirm if the record fairly presents any basis for affirmance. Childs v. Local 18, International Brotherhood of Electrical Workers, 719 F.2d 1379, 1384 (9th Cir.1983). On appeal from a grant of summary judgment, we review the record de novo, using the same standard as the district court under Fed.R.Civ.P. 56(c). Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328 (9th Cir.1983). Because we have decided that the closure standard of the Executive Orders and the Regulation applies independently of the designation of the land as open under the Act, the issue before us is whether the damage to Dove Springs Canyon amounts to "considerable adverse effects" which require the Canyon's closure. The parties agree that there is no genuine issue as to the extent of the damage to the Canyon, and therefore resolution of this issue depends upon whether the Secretary's interpretation of this phrase or that of the Sierra Club is to control.
 
 
 17
 Traditionally, an agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable. Hawaiian Electric Co. v. United States E.P.A., 723 F.2d 1440, 1447 (9th Cir.1984).
 
 
 18
 The Secretary interprets "considerable adverse effect" to require determining what is "considerable" in the context of the Desert Area as a whole, not merely on a parcel-by-parcel basis. The Secretary contends such a broad interpretation is necessary and is consistent with 43 U.S.C. Sec. 1781(a)(4) which expresses a congressional judgment that ORV use is to be permitted "where appropriate."
 
 
 19
 Sierra Club argues against the Secretary's interpretation. Sierra Club contends that the interpretation of the Executive Orders set forth by the Council on Environmental Quality (CEQ) in its August 1, 1977 memorandum is entitled to great deference, and that the CEQ's interpretation requires the closure of the Canyon. This argument fails on two grounds.
 
 
 20
 First, the CEQ's interpretation of the Executive Order does not directly conflict with the Secretary's interpretation of the regulation. While it states that "the term 'considerable' should be liberally construed to provide the broadest possible protection reasonably required by this standard," CEQ memorandum at 3, it does not purport to decide whether the term "considerable adverse effects" should be analyzed in the context of the entire Desert Area, or on a site-specific basis. Moreover, the memorandum acknowledges that the responsibility for closing particular areas rests with "responsible federal officials in the field" "[b]ased on their practical experience in the management of the public lands, and their first-hand knowledge of conditions 'on-the-ground.' " Id.
 
 
 21
 Second, the authority of the CEQ is to maintain a continuing review of the implementation of the Executive Order. Executive Order No. 11644, Sec. 8(b). The authority of the Secretary, on the other hand, is to promulgate regulations to provide for "administrative designation of the specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted." Id. at Sec. 3(a). Discretion rests with the Secretary, therefore, to determine whether and to what extent specific areas should be closed to ORV use. Thus, it is the Secretary's interpretation which is entitled to our deference.
 
 
 22
 Sierra Club argues that even if the CEQ's interpretation of the closure standard is not controlling, the Secretary's interpretation should not be adopted because it is unreasonable. Sierra Club insists that the sacrifice of any area to permanent resource damage is not justified under the multiple use management mandate of 43 U.S.C. Sec. 1702(c) that requires multiple use "without permanent impairment of the productivity of the land and the quality of the environment." In further support of its position Sierra Club adverts to the requirement in the Act that the Secretary prevent "unnecessary and undue degradation" of the public lands, 43 U.S.C. Sec. 1732(b). In addition, Sierra Club contends, when Congress established the Desert Area it intended the Secretary to fashion a multiple use and sustained yield management plan "to conserve [the California desert] resources for future generations, and to provide present and future use and enjoyment, particularly outdoor recreational uses, including the use, where appropriate, of off-road recreational vehicles." 43 U.S.C. Sec. 1781(a)(4). Sierra Club argues that it is unreasonable for the Secretary to find ORV use "appropriate" when that use violates principles of sustained yield, substantially impairs productivity of renewable resources and is inconsistent with maintenance of environmental quality.
 
 
 23
 We can appreciate the earnestness and force of Sierra Club's position, and if we could write on a clean slate, would prefer a view which would disallow the virtual sacrifice of a priceless natural area in order to accommodate a special recreational activity. But we are not free to ignore the mandate which Congress wrote into the Act. Sierra Club's interpretation of the regulation would inevitably result in the total prohibition of ORV use because it is doubtful that any discrete area could withstand unrestricted ORV use without considerable adverse effects. However appealing might be such a resolution of the environmental dilemma, Congress has found that ORV use, damaging as it may be, is to be provided "where appropriate." It left determination of appropriateness largely up to the Secretary in an area of sharp conflict. If there is to be a change it must come by way of Congressional reconsideration. The Secretary's interpretation that this legislative determination calls for accommodation of ORV usage in the administrative plan, we must conclude, is not unreasonable and we are constrained to let it stand.
 
 
 24
 The court must review agency action to determine if it complies with the Secretary's interpretation of the Regulation. In Perkins v. Bergland, 608 F.2d 803 (9th Cir.1979), we held that the scope of review of an agency's factual findings is very narrow where the Secretary has been vested with substantial discretion, as in the administration of public land. The Perkins plaintiffs sued the Secretary of Agriculture challenging a reduction of their grazing permits which the Secretary had ordered because of changed conditions on the range. We noted that the various goals of "multiple use," "sustained yield," and how "best [to] meet the needs of the American people," vested in the Secretary discretion to determine optimum means of administering forest and range land. Id. at 806. We concluded that the agency's factual findings as to range conditions and carrying capacity would be overturned only if arbitrary and capricious. Id. at 807 (citing 5 U.S.C. Sec. 706(2)(A)).
 
 
 25
 Under the California Desert Conservation Area Plan, approximately 4 percent (485,000 acres) of the total acreage is now open to unrestricted ORV use. Dove Springs itself constitutes only 0.025 percent of BLM administered lands in the Desert Area. Although all parties recognize that the environmental impact of ORV use at Dove Springs is severe, the Secretary's determination that these effects were not "considerable" in the context of the Desert Area as a whole is not arbitrary, capricious, or an abuse of the broad discretion committed to him by an obliging Congress.
 
 FARRIS, Circuit Judge, concurring:
 
 26
 I am pleased to concur in Judge Poole's well-reasoned Opinion. However, I disagree with the majority's statement that "an agency's interpretation of its own regulation is entitled to a high degree of deference if it is not unreasonable." I would adhere to the established standard of review stating that when an agency is interpreting its own regulation, it is entitled to "even more deference" than the "considerable deference" it would enjoy if it were merely interpreting a statute it administers. See Hawaiian Electric Co. v. EPA, 723 F.2d 1440, 1447 (9th Cir.1984), citing Montana Power Co. v. EPA, 608 F.2d 334, 345 (9th Cir.1979); see also Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801-802, 13 L.Ed.2d 616 (1965).
 
 
 
 [1]
 The American Motorcycle Association was allowed to intervene in opposition to the Sierra Club. Because their arguments either duplicate the Secretary's, or are not dispositive of the issues, we do not address them separately