**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED GARDNER; and CONCERNED
CITIZENS FOR LITTLE CANYON
MOUNTAIN, an Unincorporated
Association,
              *Plaintiffs-Appellants,*

              v.

UNITED STATES BUREAU OF LAND
MANAGEMENT,
              *Defendant-Appellee.*

No. 09-35647

D.C. No.
2:07-cv-01722-SU

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, Senior District Judge, Presiding

Argued and Submitted
January 10, 2011—Seattle, Washington

Filed April 7, 2011

Before: Susan P. Graber and Milan D. Smith, Jr.,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

Marianne Dugan, Eugene, Oregon, for the plaintiffs-appellants.

Nicholas DiMascio and Kathryn E. Kovacs, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendant-appellee.

## OPINION

M. SMITH, Circuit Judge:

Plaintiffs-Appellants Fred Gardner and Concerned Citizens for Little Canyon Mountain (sometimes collectively Gardner) brought suit for declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, seeking to compel Defendant-Appellee United States Bureau of Land Management (BLM) to prohibit off-road vehicle use of Oregon's Little Canyon Mountain area. The district court granted summary judgment to the BLM. On

appeal, Gardner asserts that the BLM's failure to close Little Canyon Mountain to off-road vehicle use violated the Federal Land and Policy Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701-1785, and off-road vehicle regulations, 43 C.F.R. pts. 8340-8342.

We have jurisdiction under 28 U.S.C. § 1291. We affirm. We hold that the BLM did not, and was not required to, make a finding that the off-road vehicle use of which Gardner complains had caused "considerable adverse effects" on the resources enumerated under 43 C.F.R. § 8341.2(a) and, accordingly, we cannot compel the BLM to act to close Little Canyon Mountain to off-road vehicle use. We also hold that the BLM's denial of Gardner's petition to close Little Canyon Mountain to off-road vehicle use was not arbitrary and capricious.

## FACTUAL AND PROCEDURAL BACKGROUND

Little Canyon Mountain is located in Grant County, Oregon, in the BLM's Prineville District. The BLM manages approximately 2,500 acres of land in Little Canyon Mountain, which is bordered by private property and the Strawberry Mountain Wilderness.

Since 1985, when the John Day Resource Management Plan (John Day RMP) was issued, Little Canyon Mountain has been designated as "open use" year-round, thereby permitting off-road vehicles to use the area. There are at least five miles of documented trails that are accessible to smaller off-road vehicles (less than fifty inches wide), and at least twenty-six miles of road accessible to larger off-road vehicles, such as trucks, within Little Canyon Mountain. Land within Little Canyon Mountain has been described as steep terrain with high-clay soil that ruts easily. Among its features is a two-acre area, once used for mining, known as "the pit," which is especially popular with off-road vehicle users.

In 2003, the BLM undertook an environmental assessment to ascertain the likely effects on Little Canyon Mountain of a proposed project designed to decrease fire risk and improve forest health by reducing fuels. The environmental assessment predicted that the proposed fuels-reduction project would likely increase off-road vehicle use in Little Canyon Mountain and could lead, in five to ten years, to "noticeable" impacts in the form of erosion, new trail routes, and a disturbance of wildlife. To mitigate the potential impact of increased off-road vehicle use, the proposal, as ultimately adopted, suggested limiting access to "the pit" by vehicles more than fifty inches wide. The proposal also created a forested buffer around the pit to "provide a sight and sound barrier between the pit and surrounding areas." After the fuels-reduction project was implemented, the BLM received numerous complaints from adjacent land owners regarding off-road vehicle use in and around the pit.

Gardner has lived adjacent to Little Canyon Mountain for almost twenty years. After the fuels-reduction project was implemented, he complained to the BLM about a dramatic increase in year-round off-road vehicle use, including at night and on weekdays. Concerned Citizens is an unincorporated association whose members are local land owners, miners, and grazers who claim to have been adversely affected by off-road vehicle use in Little Canyon Mountain. Gardner and Concerned Citizens filed a petition with the BLM in June 2006 asking the BLM "to immediately [ ] close BLM land on Little Canyon Mountain to all recreational [off-road vehicle] use."

Christina Welch, the BLM's Field Manager in charge, responded by letter to Gardner's petition. The letter stated that Little Canyon Mountain could be closed pursuant to 43 C.F.R. § 8341.2(a) only if the offending off-road vehicle use was causing "considerable adverse effects." Welch further indicated that she was not aware of any "significant, increased resource damage" except that caused by pickup trucks.

Welch's letter also stated that the BLM "would welcome any specific, quantifiable information [Gardner] can provide" and requested that Gardner "show [the BLM] specific instances and locations of significant problems." The BLM further encouraged Gardner and other residents to be involved in the John Day RMP revision process then underway.

On February 28, 2007, prompted by public health and safety concerns after an off-road vehicle rider was struck by a motor vehicle on the county road, the BLM limited off-road vehicle use to "marked designated roads" and reiterated that vehicles wider than fifty inches (pickup trucks) were not permitted in "the pit" for public safety reasons.

Little Canyon Mountain remained open to off-road vehicle use after the February 2007 accident, and Gardner and others complained of continuing problems. The BLM initiated an alternative dispute resolution process between the complaining parties and off-road vehicle users, but it proved unsuccessful in resolving the disputes between the parties. Gardner filed suit on November 19, 2007. The district court granted summary judgment to the BLM. Gardner timely appeals.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). Section 706 of the APA governs judicial review of the challenged agency action or inaction here. 5 U.S.C. § 706; *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205 (9th Cir. 2004) ("Because the statutes . . . do not contain separate provisions for judicial review, our review is governed by the APA.").

## DISCUSSION

### I.  Statutory and Regulatory Framework

[1] Congress enacted the FLPMA in 1976, thereby giving authority and direction to the BLM (through the Secretary of

the Interior) concerning the use and management of certain federal lands. Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, 90 Stat 2743 (1976). The FLPMA requires the BLM to "develop, maintain, and, when appropriate, revise land use plans," 43 U.S.C. § 1712(a), also known as resource management plans (RMPs), 43 C.F.R. § 1610.2. The FLPMA also requires the BLM to manage public lands in accordance with "principles of multiple use and sustained yield," 43 U.S.C. § 1732(a), while contemporaneously enforcing relevant environmental laws governing the use of public lands, *id*. §§ 1701(a)(8), 1732(b). In this case, the BLM manages Little Canyon Mountain in accordance with the requirements of the John Day RMP.

In 1972, President Nixon issued an Executive Order directing the BLM to "establish policies and provide for procedures that will ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands." Exec. Order No. 11,644, 37 Fed. Reg. 2877, § 1 (Feb. 8, 1972). Pursuant to the Nixon Order, the BLM is required to monitor the effects of off-road vehicle use on public lands and "from time to time amend or rescind designations of areas" in order to protect the environment. *Id*. § 8.

**[2]** In 1977, President Carter issued an Executive Order amending and strengthening Order 11644. Exec. Order No. 11,989, 42 Fed. Reg. 26,959 (May 24, 1977). The Carter Order directs the BLM, notwithstanding existing designations under the relevant RMP, to immediately close areas or trails where "the use of off-road vehicles will cause or is causing considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands." *Id*. § 2.

**[3]** In response to the FLPMA, the Nixon and Carter Orders, and other federal statutes, the Department of the Inte-

rior adopted new regulations regarding off-road vehicle use. *See* 43 C.F.R. § 8340.0-1 *et seq.* These off-road vehicle regulations require the BLM to designate lands as "open, limited, or closed" to off-road vehicle use through the land-use process, in consultation with interested parties and public comments. 43 C.F.R. §§ 8342.1, 8342.2. The BLM also has regulatory authority to change off-road vehicle use designations outside the RMP process. Of particular relevance to this case, 43 C.F.R. § 8341.2(a) requires the immediate closure of areas used by off-road vehicles when an "authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects upon soil, vegetation, wildlife, wildlife habitat, cultural resources, historical resources, threatened or endangered species, wilderness suitability, other authorized uses, or other resources."

**[4]** We have previously held that 43 C.F.R. § 8341.2(a) "creates a separate duty to close without regard to the designation process; it does not automatically become inoperative once the Secretary exercises his discretion to designate the land." *Sierra Club v. Clark*, 756 F.2d 686, 690 (9th Cir. 1985). Thus, the BLM has authority to limit off-road vehicle use in Little Canyon Mountain independent of the designations specified in the John Day RMP. The BLM also has authority to close or limit access to public lands in order "[t]o protect persons, property, and public lands and resources." 43 C.F.R. § 8364.1(a).

## II.  5 U.S.C. § 706(1), 43 U.S.C. § 1732(b), and 43 C.F.R. § 8341.2(a)

**[5]** Reviewing courts are authorized by 5 U.S.C. § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed." The Supreme Court has clarified that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 64 (2004).

**[6]** The Court explained the limited application of § 706(1) by noting that its purpose "is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Id.* at 66. In particular, "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with [broad] congressional directives is not contemplated by the APA." *Id.* at 67. Even if a court believes that the agency is withholding or delaying an action the court believes it should take, the "ability to compel agency action is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citation and quotation marks omitted). Thus, in this instance, unless the BLM is required to take certain actions with respect to off-road vehicle use in Little Canyon Mountain, we cannot compel the BLM to act. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019-20 (9th Cir. 2007) (dismissing a claim when the plaintiff could not establish that an agency failed to take a discrete action that it was required to take).

In its summary judgment in favor of the BLM, the district court made clear that it did not have authority to compel the BLM to act, in the absence of a specific legislative or regulatory command. Gardner argues the district court erred because the FLPMA and the BLM's implementing regulations require the BLM to close Little Canyon Mountain to off-road vehicle use because of the significant negative effects generated by off-road vehicle use. We disagree.

In the FLPMA, Congress created a broad statutory framework setting forth the goals and management requirements that it envisioned for public lands. It does not prescribe discrete agency action that the BLM must take in this case, as Gardner claims. In support of his argument, Gardner cites § 1732(b) of the FLPMA requiring that "[i]n managing the public lands the Secretary shall, by regulation or otherwise,

take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b). However, in *SUWA*, the Supreme Court considered §§ 1732(a) and 1782(c) of the FLPMA and held that they did not require discrete agency action. 542 U.S. at 66, 72. The Court reasoned that, although the FLPMA mandates that the BLM preserve wilderness and manage public lands in accordance with land use plans, its mandates are not tantamount to a "specific statutory command requiring" agency action. *Id*. at 71.

**[7]** While this case was brought under § 1732(b), we conclude that the reasoning the Supreme Court used in *SUWA* in construing §§ 1732(a) and 1782(c) of the FLPMA applies with equal force to § 1732(b). Like §§ 1732(a) and 1782(c) of the FLPMA, § 1732(b) directs the BLM to achieve the broad objectives of preventing unnecessary or undue degradation of public lands. *See SUWA*, 524 U.S. at 66-67; 43 U.S.C. § 1732(b). Nevertheless, § 1732(b) "leaves [the] BLM a great deal of discretion in deciding how to achieve" these objectives, *SUWA*, 524 U.S. at 66, because it does not specify precisely how the BLM is to meet them, other than by permitting the BLM to manage public lands by regulation or otherwise. *See* 43 U.S.C. § 1732(b). Accordingly, we hold that the broad wording of § 1732(b) does not mandate that the BLM adopt restrictions that would result in completely excluding off-road vehicle use in Little Canyon Mountain.

There is no evidence in the record before us that Little Canyon Mountain has suffered "unnecessary or undue degradation." Said another way, there is no evidence that the BLM has failed to meet the broad mandates set forth in 43 U.S.C. § 1732(b). Moreover, even if off-road vehicles were causing "unnecessary or undue degradation," it is within the BLM's discretion to decide how to remedy such harm and manage the lands in accordance with the multiple-use directive set forth in the FLPMA. *See* 43 U.S.C. § 1732(a). Thus, it would be within the BLM's discretion to choose appropriate measures to address the environmental degradation, which may or may

not include closing the entire Little Canyon Mountain area to off-road vehicle use. Accordingly, we hold that 43 U.S.C. § 1732(b) does not compel the BLM to close Little Canyon Mountain to off-road vehicle use.

Gardner also claims that 43 C.F.R. § 8341.2(a) compels the BLM immediately to close Little Canyon Mountain to off-road vehicle use. Section 8341.2(a) provides:

> [W]here the authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects upon soil, vegetation, wildlife, wild-life habitat, cultural resources, historical resources, threatened or endangered species, wilderness suit-ability, other authorized uses, or other resources, the authorized officer shall immediately close the areas affected to the type(s) of vehicle causing the adverse effect until the adverse effects are eliminated and measures implemented to prevent recurrence.

As we have previously held, 43 C.F.R. § 8341.2(a) does create independent authority outside the RMP designation process for the BLM to limit off-road vehicle use in areas subject to considerable adverse effects. *Sierra Club*, 756 F.2d at 690.

**[8]** Perhaps more importantly, the predicate to the BLM's regulatory mandate to close the areas affected by off-road vehicle use is a finding by the BLM of "considerable adverse effects" on the enumerated resources. Here, nothing in the record suggests that the BLM has made a determination that off-road vehicles are causing, or will cause, "considerable adverse effects" to the resources listed in 43 C.F.R. § 8341.2(a). Gardner contends that the BLM was well aware of "considerable adverse effects" based on evidence supplied by the plaintiffs and did make, or should have made, a finding of "considerable adverse effects."[1] In particular, Gardner

---

[1] Gardner also submitted other incident reports, such as the Sheriff's report, detailing problems in the area. While this evidence certainly sup-

points to a report prepared for the 2003 environmental assessment for the fuels-reduction project by the BLM's off-road vehicle specialist. But Gardner's argument is not supported by the record. Certainly the specialist's report acknowledges many of the actual and potential effects from off-road vehicle use, of which Gardner complains, and predicted "noticeable" impacts likely to result from more off-road vehicle users if the fuels-reduction project were implemented. However, the specialist's report was limited to predicting that a potential impact from the fuels-reduction project could be increased off-road vehicle use and potential noticeable impacts. The report did not make a finding that off-road vehicle use had reached or would reach the level of "considerable adverse effects" on the resources enumerated in 43 C.F.R. § 8341.2(a). Even if these predicted adverse effects have occurred, or are occurring, it is within the BLM's discretion to determine whether such effects are sufficiently "severe" to constitute "considerable adverse effects." *See Sierra Club*, 756 F.2d at 690-91.

There is no other evidence in the record that the BLM has determined that off-road vehicle use is causing or will cause "considerable adverse effects." To the contrary, the BLM's Field Manager specifically told Gardner that she was *not* aware of any significant adverse effects to Little Canyon Mountain beyond the truck issue in the pit, even while she solicited more evidence about such concerns from Gardner.

Further, 43 C.F.R. § 8341.2(a) does not specify a process or particular timing for the BLM to determine when off-road vehicles are causing "considerable adverse effects." Rather,

ports Gardner's argument that the plaintiffs are negatively affected by the ongoing off-road vehicle use in Little Canyon Mountain, they are not specific to impacts on the resources listed in 43 C.F.R. § 8341.2(a). These reports are, therefore, insufficient in and of themselves to require the BLM to close Little Canyon Mountain to off-road vehicles.

the regulatory text gives the BLM discretion to decide how and when a determination of "considerable adverse effects" will be made. In contrast, the Supreme Court in *SUWA* provided examples of "ministerial or non-discretionary act[s]" that would compel agency action. 542 U.S. at 64-65 (internal quotation marks omitted). For example, the Court noted that when implementing regulations are required " '[w]ithin 6 months' of the date of enactment of the Telecommunications Act of 1996," the Court could issue a judicial decree requiring the prompt issuance of regulations but could not set forth the content of the regulations. *Id.* at 65. Here, 43 C.F.R. § 8341.2(a) neither requires a particular process nor mandates when a determination must be made. Moreover, we have no authority to "order the agency to reach a particular result," *Mt. St. Helens Mining & Recovery Ltd. P'ship v. United States*, 384 F.3d 721, 728 (9th Cir. 2004), or to compel discretionary agency action, *Alvarado*, 509 F.3d at 1019-20.

**[9]** We therefore conclude that the BLM has not made a finding of "considerable adverse effects" that would trigger the mandatory closure requirements of 43 C.F.R. § 8341.2(a). In the absence of such a finding, 43 C.F.R. § 8341.2(a) does not specify the timing or process for determining "considerable adverse effects." Accordingly, we find that the BLM did not fail to take a required, discrete agency action.

## III.  Applying the arbitrary and capricious standard under 5 U.S.C. § 706(2)

**[10]** An agency's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under the arbitrary and capricious standard is narrow, and we do not substitute our judgment for that of the agency." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (citation, internal quotations marks and brackets omitted), *overruled in part on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), *as recognized by Am.*

*Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)).

A decision is arbitrary and capricious

> only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Lands Council*, 537 F.3d at 987 (internal quotation marks omitted). Agency action is valid if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal quotation marks omitted).

**[11]** Here, the BLM's denial of Gardner's petition to close Little Canyon Mountain to off-road vehicle use was not arbitrary and capricious.[2] In June 2006, Gardner filed a petition with the BLM asking the agency "to immediately [ ] close BLM land on Little Canyon Mountain to all recreational [off-road vehicle] use." Gardner's petition complained about a number of things, ranging from noise to environmental degradation. However, there is no evidence in the record that Gardner provided the BLM with specific information or scientific studies supporting his allegations of environmental damage that would qualify as "considerable adverse effects" under 43 C.F.R. § 8341.2(a).

---

[2]Gardner's primary claim is that the BLM failed to act. The parties dispute whether Gardner also sufficiently raised a challenge to final agency action. Because the outcome of the case is not affected, we give Gardner the benefit of the doubt on this issue. We interpret his complaint and briefing on appeal as also asserting a challenge to the BLM's denial of Gardner's petition to close Little Canyon Mountain to off-road vehicle use.

The BLM's Field Manager responded to Gardner's petition by stating that Little Canyon Mountain could be closed under 43 C.F.R. § 8341.2(a) only when off-road vehicle use was causing "considerable adverse effects." She further wrote that she was not aware of any "significant, increased resource damage" other than that caused by pickup trucks. Pickup trucks were already restricted from the pit as a result of the BLM's implementation of the fuels-reduction project. The BLM can close Little Canyon Mountain to off-road vehicle use, outside of the RMP revision process, only when the resources listed in the regulatory requirements, here 43 C.F.R. § 8341.2(a)—"soil, vegetation, wildlife, wildlife habitat, cultural resources, historical resources, threatened or endangered species, wilderness suitability, other authorized uses, or other resources"—suffer "considerable adverse effects." The BLM's response clearly indicated that, based on the evidence before it, the specific resources listed in the regulation were not affected to the level required by 43 C.F.R. § 8341.2(a). Gardner does not point to any other evidence in the record where the specific resources listed above are being adversely affected. In the absence of such evidence, the BLM articulated a rational reason for not granting the petition, namely that the regulatory requirements were not met.

As further evidence that the BLM did not act arbitrarily or capriciously, we note that the BLM asked Gardner to come forward with any evidence that the listed resources were being affected. The BLM's letter, after outlining the BLM's regulatory requirements under 43 C.F.R. § 8341.2(a), stated that the agency "would welcome any specific, quantifiable information you can provide" and requested Gardner to "show us specific instances and locations of significant problems." The BLM further encouraged Gardner and other residents to be involved in the RMP revision process.

[12] There is also evidence that the BLM is actively monitoring Little Canyon Mountain. Tellingly, when the BLM determined that public health safety concerns arose after an

off-road vehicle rider was struck on the county road by a motor vehicle, the agency promptly responded in accordance with its regulatory requirements. The regulations provide that the BLM may issue an order closing or restricting public lands "[t]o protect persons, property, and public lands and resources." 43 C.F.R. § 8364.1(a). On February 28, 2007, the BLM limited off-road vehicle use to "marked designated roads" and reiterated that vehicles wider than fifty inches (pickup trucks) were not permitted in "the pit" for the public safety reasons.

**[13]** On this record, we cannot conclude that the BLM acted in an arbitrary and capricious fashion. We therefore hold that the BLM did not unreasonably deny Gardner's petition to close Little Canyon Mountain to off-road vehicle use.

## CONCLUSION

For the foregoing reasons, we affirm the district court.

**AFFIRMED.**