**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA; TIMBISHA SHOSHONE TRIBE; WESTERN SHOSHONE DEFENSE PROJECT; GREAT BASIN RESOURCE WATCH, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; GERALD M. SMITH, District Manager, Battle Mountain Field Office, <br><br> Defendants - Appellees, <br><br> BARRICK CORTEZ, INC., <br><br> Defendant-intervenor - Appellee. | No. 12-15412 <br><br> D.C. No. 3:08-cv-00616-LRH-WGC <br><br> MEMORANDUM<sup>*</sup> |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

---

<sup>*</sup> This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted September 19, 2013
San Francisco, California

Before: SCHROEDER, TASHIMA, and BERZON, Circuit Judges.

Plaintiffs-Appellants Te-Moak Tribe of Western Shoshone Indians of Nevada, Timbisha Shoshone Tribe, Western Shoshone Defense Project, and Great Basin Resource Watch ("the Tribes") appeal the district court's order granting summary judgment in favor of Defendants-Appellees the Bureau of Land Management ("BLM") and Barrick Cortez, Inc. ("Cortez"). The Tribes contend that BLM's approval of the Cortez Mine Expansion Project ("the Project") violated both the Federal Land Policy and Management Act ("FLPMA") and the National Environmental Policy Act ("NEPA"). We affirm.

## A. FLPMA Claim Regarding Sacred Sites.

The Tribes first argue that BLM violated FLPMA by failing to accommodate religious uses of the Project area. FLPMA requires BLM to administer public lands in accordance with "principles of multiple use and sustained yield," while enforcing environmental laws relating to the use of public lands. 43 U.S.C. § 1732(a), (b); *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1220 (9th Cir. 2011). As part of its duties under FLPMA, BLM must take "any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C.

2

§ 1732(b).

For purposes of this case, "unnecessary or undue degradation" is "any harmful activity that is either not 'reasonably incident' to an approved mining operation or that violates a state or federal law relating to environmental or cultural resource protection." *S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of the Interior*, 588 F.3d 718, 723–24 (9th Cir. 2009); *see also* 43 C.F.R. § 3809.5.

In our prior opinion, we rejected the Tribes' claim that the whole of Mount Tenabo was a sacred site for purposes of Executive Order 13007 ("E.O. 13007"). *S. Fork Band Council*, 588 F.3d at 724. In this appeal, the Tribes argue that the pediment area of piñon-juniper groves at the base of Mount Tenabo is a sacred site within the meaning of E.O. 13007, and that the Project will interfere with religious uses of that area.

E.O. 13007 provides that BLM "shall, to the extent practicable, permitted by law, and not clearly inconsistent with essential agency functions, (1) accommodate access to and ceremonial use of Indian sacred sites by Indian religious practitioners and (2) avoid adversely affecting the physical integrity of such sacred sites." 61 Fed. Reg. 26771 (May 24, 1996). Although E.O. 13007 has no force and effect on its own, *see id.*, its requirements are incorporated into FLPMA by virtue of

3

FLPMA's prohibition on unnecessary or undue degradation of the lands, *see* 43 U.S.C. § 1732(b); 43 C.F.R. § 3809.5.

BLM studied the Project's effects for over two years, consulting with fourteen tribes and tribal organizations and reviewing several surveys of religious practices in the Mount Tenabo region. *S. Fork Band Council*, 588 F.3d at 724. The surveys described the cultural significance of the pediment area, including its importance for pine nut harvesting, but could not identify particular locations that were of greater cultural significance than others. The surveys also described the religious significance of the pediment region due to its proximity to Mount Tenabo. The surveys did not, however, indicate that the area that will be disturbed by the Project is an area used for religious ceremonies.

BLM's study of the Project resulted in over seventy pages of the Environmental Impact Statement ("EIS") devoted to consideration of the impacts on the Tribes' religious practices. *Id.* BLM reduced the original scope of the Project in response to the Tribes' concerns and agreed to continue consulting with the Tribes regarding the Project's impacts. *Id.* To mitigate the Project's impacts, BLM required that mining facilities avoid the most religiously and culturally significant areas, including the top of Mount Tenabo, the White Cliffs, the Cortez town site, and Shoshone Wells.

4

A sacred site is any "specific, discrete, narrowly delineated location" of "established religious significance" or "ceremonial use." 61 Fed. Reg. 26771. The Tribes point to comments from members of the Tribes and Tribal organizations regarding religious uses of the Project area. The Tribes' references, however, are personal in their description of practices and general in terms of location. They do not describe established practices. Moreover, E.O. 13007 requires only that sacred sites be accommodated "to the extent practicable." *Id.* BLM determined that further accommodation was not practicable given the lack of specificity as to location and as to the number of Tribal members who use any particular site on the pediment for religious activities. We see no arbitrary or capricious agency action in relation to BLM's obligation under E.O. 13007 to accommodate the use of sacred sites.

## B. FLPMA and NEPA Claims Regarding Dewatering.

The Tribes next contend that BLM violated FLPMA and NEPA by failing to adequately analyze the Project's impacts on water resources. FLPMA requires that BLM avoid unnecessary or undue degradation of public lands, 43 U.S.C. § 1732(b), and NEPA requires that BLM consider measures that may mitigate the adverse impacts of a proposed project, 40 C.F.R. §§ 1502.14(f), 1502.16(h). The Tribes argue that BLM failed to address mitigation measures specific to ground

5

water in situ, failed to propose new mitigation measures relating to surface water resources, and failed to consider the religious use and significance of water in the Mount Tenabo region.

Because the Tribes did not raise the issue of mitigation measures specific to ground water in situ during the initial or supplemental EIS public comment periods, they have waived this challenge. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764–65 (2004); *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991). As for mitigation measures relating to surface water resources, BLM proposed a detailed water resources mitigation plan and analyzed the effectiveness of that plan in accordance with our prior opinion. *See S. Fork Band Council*, 588 F.3d at 727. Finally, BLM did in fact consider the religious significance of water in the Mount Tenabo region, but the Tribes did not identify religious uses of any particular springs or seeps within the Project area. BLM's analysis of the Project's impacts on water resources was not arbitrary or capricious.

**AFFIRMED.**

6

*Judge Berzon's dissent.*

*Te-Moak Tribe of W. Shoshone Indians of Nevada v. U.S. Dept. of Interior*, No. 12-15412

I dissent as to whether the Bureau of Land Management ("BLM") violated the Federal Land Policy and Management Act ("FLPMA"). The FLPMA, as the majority states, incorporates the requirements of Executive Order 13007 ("E.O. 13007") with regard to the accommodation of Indian use of sacred sites.

The BLM's analysis of why E.O. 13007 did not apply was faulty for three reasons: the analysis failed to recognize that comments regarding the proposal did point to the area where the mine is being built as an area in which worship occurs; it demanded quantification of that use as a condition of Executive Order coverage, when no such quantification is necessary; and it required greater specificity of location than comports with Shoshone religious practices. As to the last point, to require greater specificity would interfere with Shoshone religious practices, as those practices appear to regard certain recognized natural areas, rather than specific set locations, as places for worship.

I therefore would hold the BLM's conclusions arbitrary and capricious and remand for further proceedings.