**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DESERT PROTECTIVE COUNCIL, a California non-profit corporation; et al., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR; et al., <br><br> Defendants - Appellees. | No. 13-55561 <br><br> D.C. No. 3:12-cv-01281-GPC-PCL <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted November 3, 2015
Pasadena, California

Before: FARRIS, BYBEE, and N.R. SMITH, Circuit Judges.

Plaintiffs appeal the district court's judgment denying Plaintiffs' motion for

summary judgment and granting Defendants' motion for summary judgment. We

have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

We review agency compliance with the National Environmental Policy Act ("NEPA") and the Federal Land Policy and Management Act ("FLPMA") as outlined in the Administrative Procedure Act ("APA"). *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012). Under the APA, we may set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The district court also reviewed this Bureau of Land Management ("BLM") action under the arbitrary and capricious standard. We review de novo the district court's grant of summary judgment. *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1220 (9th Cir. 2011).

1.      NEPA requires federal agencies to follow certain procedures and take a "hard look" at environmental consequences. *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1519 (9th Cir. 1992). NEPA regulations require agencies to make "environmental information . . . available to public officials and citizens before decisions are made," 40 C.F.R. § 1500.1(b), and "insure the . . . scientific integrity[] of the discussions and analyses in environmental impact statements [("EIS")]," § 1502.24. NEPA also requires agencies to discuss appropriate mitigation measures in an EIS "in sufficient detail to ensure that environmental

consequences have been fairly evaluated." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352 (1989).

The district court did not err in determining that the BLM complied with NEPA, because the BLM sufficiently evaluated and disclosed the environmental impacts of the Ocotillo wind energy facility project (the "Project"). Plaintiffs contend that they were not provided with an opportunity for public comment on 34 raptor studies that were cited in the final Avian and Bat Protection Plan ("ABPP"), but not in the draft ABPP. A mitigation plan, such as the ABPP, does not need to be in final form to comply with NEPA's procedural requirements. *See Nat'l Parks & Conservation Ass'n v. U.S. Dep't of Transp.*, 222 F.3d 677, 681 n.4 (9th Cir. 2000). The draft EIS concluded that raptor use of the Project site was low and provided supporting evidence.[1] Plaintiffs commented on the draft EIS and did not take issue with this conclusion. The final EIS was available for comment during the 30-day protest period, and Plaintiffs did not comment on the final ABPP's comparison of raptor data, despite submitting comments on other aspects of the

---

[1]The draft EIS included the results of raptor migration count and avian point count surveys, and a Biological Technical Report, which concluded that the collision risk of special status raptor species was low. The draft and final EIS also cite the *California Guidelines for Reducing Impacts to Birds and Bats from Wind Energy Development* (2007), a publicly available document that contains much of the data from the 34 raptor studies cited in the final ABPP.

final EIS. Accordingly, Plaintiffs have not shown that the BLM acted in an arbitrary and capricious manner by not including certain raptor studies in the draft ABPP.

Similarly, Plaintiffs have not shown that the methodologies used by the BLM in conducting migration surveys were arbitrary or capricious. While Plaintiffs question the BLM's methodologies as they relate to the timing of raptor migration surveys, the final EIS contains a reasoned analysis of the migration and presence of Swainson's hawks and other raptors at the Project site. We are "most deferential when reviewing scientific judgments and technical analyses within the agency's expertise under NEPA" and will not "impose [ourselves] as a panel of scientists." *See Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1051 (9th Cir. 2012) (internal citations and quotation marks omitted). Further, the BLM included a reasonably complete discussion of mitigation measures in the final EIS. It was not arbitrary and capricious for the final EIS to require turbine curtailment for golden eagles and not other raptors, because the special legal status of golden eagles justified different mitigation measures.

2. FLPMA authorizes the Department of Interior to grant rights-of-way across public lands for various purposes, including for "systems for generation, transmission, and distribution of electric energy." 43 U.S.C. § 1761(a)(4). These

grants must "require compliance with State standards for . . . environmental protection . . . if those standards are more stringent than applicable Federal standards." § 1765(a)(iv). The grants must also include terms and conditions that "minimize damage to . . . fish and wildlife habitat and otherwise protect the environment." § 1765(a)(ii).

The BLM did not act arbitrarily and capriciously in granting a right-of-way for the Project. The right-of-way explicitly requires compliance with state law. Contrary to Plaintiffs' argument, the California Department of Fish and Wildlife has not interpreted the California Fish and Game Code as requiring wind energy facilities to prevent all bird and bat fatalities. The right-of-way also includes terms and conditions minimizing damage to wildlife habitat and protecting the environment. The right-of-way was not required to include turbine curtailment for all raptor species as a mitigation measure. The Project adopted sufficient mitigation measures designed to minimize damage to wildlife habitat.

3.      "[B]ecause the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," we do not need to determine whether the Laborers' Union lacked organizational standing. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). The Laborers'

Union's claims and arguments were nonetheless fully presented to the district court by its member Plaintiff.

4.      In its initial complaint, Plaintiffs did not adequately plead certain NEPA claims.  Nonetheless, the district court made a merits determination on all of Plaintiffs' unpleaded claims during the summary judgment process.  Defendants also fully responded to all of the claims.  Therefore, the district court did not abuse its discretion in refusing to grant Plaintiffs leave to amend the complaint to add these claims.  Such amendment would have been futile and subject to dismissal. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

**AFFIRMED**.