# United States Court of Appeals
## For the First Circuit

No. 11-1597

SCARBOROUGH CITIZENS PROTECTING RESOURCES;
DAVID T. PAUL, PAUL AUSTIN, SUSAN DeWITT WILDER,

Plaintiffs, Appellants,

v.

U.S. FISH AND WILDLIFE SERVICE; MARVIN MORIARTY,
Northeast Regional Director, U.S. Fish and Wildlife Service;
PAUL LePAGE, Governor, State of Maine; CHANDLER WOODCOCK,
Commissioner, Maine Department of Inland Fisheries and Wildlife;
and PATRICIA AHO, Commissioner,
Maine Department of Environmental Protection,[*]

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before
Boudin, Selya and Stahl,
Circuit Judges.

Stephen F. Hinchman with whom Law Offices of Stephen F. Hinchman, LLC was on brief for appellants.
Evan J. Roth, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief for the federal defendants, appellees.

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Paul LePage, Chandler Woodcock, and Patricia Aho have been substituted for John E. Baldacci, Roland Martin and David P. Littell, as Governor, State of Maine; Commissioner, Maine Department of Inland Fisheries and Wildlife; and Commissioner, Maine Department of Environmental Protection.

Paul Stern, Deputy Attorney General, with whom Gerald D. Reid and Mark Randlett, Assistant Attorneys General, Office of the Attorney General, were on brief for the state defendants, appellees.

---

March 22, 2012

---

**BOUDIN**, **Circuit Judge**.  This litigation concerns a segment of the Eastern Trail in Scarborough, Maine.  The Eastern Trail is a public recreational trail which is part of a network of trails running along the Eastern Seaboard. http://www.easterntrail.org.  The portion of the Trail at issue in this case is over three miles long, runs through a 32-acre tract of land owned by the state of Maine, and is used in part for recreation and to access the state-managed Scarborough Marsh Wildlife Management Area.

An association and several individuals who regularly use the Trail for recreating and hunting, and who support wildlife conservation ("Scarborough Citizens") brought suit against the United States Fish and Wildlife Service ("USFWS") and its Northeast Regional Director, as well as the Governor of Maine and the Commissioners of the Maine Department of Inland Fisheries and Wildlife ("IFW") and Department of Environmental Protection ("DEP").  Scarborough Citizens alleged that easements conveyed by the state on the parcel of land violate the law.

As alleged in the complaint, in 1961 Maine purchased the tract of land (formerly owned by a railroad and apparently consisting predominately of the Trail itself) exclusively using federal funds granted to the state under the Pittman-Robertson Wildlife Restoration Act, also known as the Federal Aid in Wildlife Restoration Act ("Wildlife Restoration Act"), 16 U.S.C. §§ 669-669k

-3-

(2006).  Funds are granted under the Wildlife Restoration Act only for approved purposes or projects, id. § 669e; the approved purpose for this land was "waterfowl habitat, waterfowl management, and access to waterfowl hunting."

Beginning in 1962 and continuing through 2005, the state and IFW conveyed various easements on portions of the Trail to the Town of Scarborough, primarily for sanitary pipelines and a town way, as well as to private parties for access to adjoining property.  In consequence, the very eastern-most portion of the Trail has become a town road.  The bulk of the rest of the Trail is graveled and, pursuant to a 2003 agreement between the Town of Scarborough and IFW, limited to pedestrian and non-motorized vehicle access, save for limited vehicle access for hunting and trapping in October and December.

However, an easement granted by IFW in 2005 and a subsequent permit granted by DEP allowed construction of a road over 766 feet of previously-restricted trail to give vehicular access to a new planned subdivision.  In 2008, IFW realized that the property was likely purchased with Wildlife Restoration Act funds and reported that discovery to USFWS.  Scarborough Citizens learned of the funding source in 2009 only after filing a request under Maine's Freedom of Access Act with IFW.  In its view, the grant of easements--and in particular the construction of a paved,

-4-

general-use town road--on any portion of the 1961 purchase violated federal restrictions.[1]

In 2010, Scarborough Citizens filed a suit for injunctive and declaratory relief, alleging violations of the Wildlife Restoration Act, the National Environmental Policy Act, ("NEPA"), 42 U.S.C. § 4321 et seq. (2006), and state law. Following the magistrate judge's recommendation, Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., No. 2:10-cv-00315-DBH, 2011 WL 722411 (D. Me. Feb. 22, 2011), the district court dismissed the federal claims on the merits and declined to exercise supplemental jurisdiction over the state law claims, No. 10-315-P-H, 2011 WL 1131539 (D. Me. Mar. 28, 2011).

In its appeal, Scarborough Citizens argues that the state agency has repeatedly violated the Wildlife Restoration Act and federal regulations in varying respects by conveying nearly ten easements on various portions of the Eastern Trail between 1968 and 2005. The gist of the claim is that these conveyances resulted in uses of the land, initially purchased with funds from the Wildlife Restoration Act, contrary to the purposes for which it was initially acquired.

---

[1]Recognizing a potential legal problem, federal and state officials entered into negotiations apparently aimed at a repayment to the federal government; we are told that "IFW continues to work to resolve the outstanding issues," and the federal officials' brief cites a draft memorandum of understanding.

The Wildlife Restoration Act, enacted in 1937, authorizes the Secretary of the Interior to disburse money derived from excise taxes on hunting equipment to states for "wildlife-restoration projects." 16 U.S.C. § 669. Funded projects must be approved by the Secretary and conform to standards fixed by him or her, id., and the apportioned funds must be expended only for the project, id. §§ 669e(a), 669k(d)(1). The state is also obliged to maintain completed wildlife-restoration projects. Id. § 669g.

The statute lacks a private right of action, e.g., Ill. State Rifle Ass'n v. Illinois, 717 F. Supp. 634, 638 (N.D. Ill. 1989), but most courts, including the district court here, have allowed plaintiffs to challenge federal agency action--including any such action allegedly violating the Wildlife Restoration Act--under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006). See, e.g., Sportsmen's Wildlife Def. Fund v. Romer, 29 F. Supp. 2d 1199, 1211 (D. Colo. 1998). However, under Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004), in an APA challenge to federal agency inaction it must be shown that USFWS "failed to take a discrete agency action that it is required to take."

We start by asking whether the Wildlife Restoration Act provision cited by Scarborough Citizens imposes a discrete, non-discretionary duty to act on the federal officials. USFWS argues that the claims have been waived; but the district court decided

-6-

them on the merits and we will treat them as preserved even though only sketchily raised in the complaint. By contrast, the claims initially brought against state officials under the Wildlife Restoration Act were withdrawn voluntarily in the district court and cannot be revived on appeal.

The key statutory provision relied upon reads:

(a) Setting aside funds

Any State desiring to avail itself of the benefits of this chapter shall, by its State fish and game department, submit programs or projects for wildlife restoration . . .
  (2) The Secretary of the Interior shall approve only such comprehensive plans or projects as may be substantial in character and design and the expenditure of funds hereby authorized shall be applied only to such approved comprehensive wildlife plans or projects and if otherwise applied they shall be replaced by the State before it may participate in any further apportionment under this chapter. No payment of any money apportioned under this chapter shall be made on any comprehensive wildlife plan or project until an agreement to participate therein shall have been submitted to and approved by the Secretary of the Interior.

16 U.S.C. § 669e(a).

Scarborough Citizens focuses on the statutory requirement that if authorized funds are "otherwise applied," "they shall be replaced by the State before it may participate in any further apportionment"; a regulation, 50 C.F.R. § 80.14(a) (2010), says the same thing. But here the funds were "applied"--and properly so--to acquire the Trail. Neither the statute nor the echoing regulation

-7-

just cited addresses the issue of the subsequent misuse or disposal of property once acquired; but the regulations do so in the multi-part section 80.14(b) and it is to those provisions that we now turn.

Regulations can, by themselves, not only impose liabilities on non-federal parties but also impose legal duties on federal officers such that their inaction is subject to judicial review under the APA. However, "[t]he limitation to <u>required</u> agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." <u>Norton</u>, 542 U.S. at 65; <u>accord</u> <u>Veterans for Common Sense</u> v. <u>Shinseki</u>, 644 F.3d 845, 869 (9th Cir. 2011); <u>Benzman</u> v. <u>Whitman</u>, 523 F.3d 119, 130 (2d Cir. 2008).

The pertinent regulations provide:

§ 80.14 Application of Wildlife and Sport Fish Restoration Program funds.
(a) States must apply Wildlife and Sport Fish Restoration Program funds only to activities or purposes approved by the Regional Director. If otherwise applied, such funds must be replaced or the State becomes ineligible to participate.
(b) Real property acquired or constructed with Wildlife and Sport Fish Restoration Program funds must continue to serve the purpose for which acquired or constructed.
(1) When such property passes from management control of the State fish and wildlife agency, the control must be fully restored to the State fish and wildlife agency or the real property must be replaced using non-Federal funds not derived from license revenues.

-8-

> Replacement property must be of equal value at current market prices and with equal benefits as the original property. The State may have up to 3 years from the date of notification by the Regional Director to acquire replacement property before becoming ineligible.
> (2) When such property is used for purposes that interfere with the accomplishment of approved purposes, the violating activities must cease and any adverse effects resulting must be remedied.
> (3) When such property is no longer needed or useful for its original purpose, and with prior approval of the Regional Director, the property must be used or disposed of as provided by 43 CFR 12.71 or 43 CFR 12.932.

50 C.F.R. § 80.14 (2010).

Referring to the grant of easements, Scarborough Citizens' complaint alleged violations of each of the three provisions in section 80.14(b) reproduced above--loss of management control (section 80.14(b)(1)), misuse (section 80.14(b)(2)), and disposal (section 80.14(b)(3)). While actions of state officers are not subject to APA review, Karst Envtl. Educ. & Prot., Inc. v. EPA, 475 F.3d 1291, 1298 (D.C. Cir. 2007), Scarborough Citizens argues the regulations confer two non-discretionary duties on USFWS itself. Specifically, it says USFWS must notify Maine that the state must remedy the alleged violation, and USFWS must also bar Maine from further apportionments of Wildlife Restoration Act funds.

Section 80.14(b)(1) refers to a potential "notification by the [USFWS] Regional Director," but it does not say that USFWS is required to make such a notification, so no APA mandatory duty

exists under Norton.  Cf. Gardner v. U.S. Bureau of Land Mgmt., 638 F.3d 1217, 1224 (9th Cir. 2011).  And it indeed refers to state ineligibility for apportionments under the program if management control is lost over funded property; but while it "sets out actions a state must take in order to cure a misuse of federal aid monies," it is "silent . . . with respect to the actions the USFWS may or must take in response to the misuse." Sportsmen's Wildlife Def. Fund, 29 F. Supp. 2d at 1212.[2]

This reading of the regulations falls within the normal contours of judicial review of agency actions.  Cutting off funding in response to a violation smacks of a decision whether or not to seek enforcement, which carries a presumption of non-reviewability. Heckler v. Chaney, 470 U.S. 821, 831 (1985).  As the Supreme Court has "repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." Massachusetts v. EPA, 549 U.S. 497, 527 (2007).

After the district court's decision in this case, the Wildlife Restoration Act regulations were amended and re-organized in 2011.  The new regulations say that when the state "allows a use

---

[2]We also reject Scarborough Citizens' reliance on section 80.14(b)(3), the disposal provision.  None of the easements here was a "disposal" of the property as the regulations use the term--a label for what happens to property only after the formalized process described in the regulations, to which both the state and federal agencies explicitly agree, occurs.

of real property that interferes with its authorized purpose under a grant," USFWS "may declare the agency ineligible to receive new grants." 50 C.F.R. § 80.135(f) (2011) (emphasis added). This amended language accords with our conclusion that a funds cut-off, provoked by a breach of the regulatory provisions at issue, is a discretionary enforcement decision.

Scarborough Citizens also challenges under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. (2006), the state's conveyance of the 2005 easement to a private developer to construct a street on 766 feet of the Eastern Trail to allow pedestrian and vehicle access to a subdivision. They allege this conveyance "encumbered" the Eastern Trail and required NEPA compliance by both the federal and state officials.

NEPA establishes a now familiar assessment process that officials must follow before undertaking a "major Federal action[] significantly affecting the quality of the human environment." Id. § 4332(C). Like the Wildlife Restoration Act, NEPA does not by its terms create a private right of action; but, as with the former statute, federal agency action covered by NEPA is reviewable under the APA. E.g., Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 72 (D.C. Cir. 2011).

Scarborough Citizens framed its claim under NEPA in the district court as follows:

> In conveying the 2005 easement to [the private developer], which required federal approval,

-11-

> State and Federal Defendants violated [NEPA] by encumbering the Eastern Trail without first taking a hard look at whether the conveyance will significantly affect the quality of the human environment.

The difficulty, of course, is that the federal officials did not convey the easement, and while a grant of federal approval might perhaps have required an environmental assessment under NEPA under certain circumstances, no such approval was sought by the state officials or granted by the federal ones.

Plaintiffs offer two main theories for applying NEPA to a case in which the challenged action--namely, the conveyance of an easement to use or cross a portion of the state-owned Trail--was taken by the state. The first theory is that "inaction" by federal officials can in some cases violate NEPA, that the state's conveyor should have requested federal approval and therefore that NEPA was violated by federal officials. The "therefore" constitutes the familiar lawyer's non-sequitur.

Although deliberate inaction might in some cases be subject to NEPA, 40 C.F.R. § 1508.18 (2011); Mayaguezanos por la Salud y el Ambiente v. United States, 198 F.3d 297, 301 (1st Cir. 1999), it is unclear that the grant of the easement required federal "approval" at all. The only relevant regulatory provision mentioning federal approval is that governing disposal, but the Trail segment in question was or will be paved--not sold or otherwise relinquished--and the disposal regulation is not

-12-

applicable here.  See note 2, above.  In any event, as federal officials were apparently not advised of the grant, failing to object can hardly be treated as a surrogate for approval given without complying with NEPA.

Alternatively, if the grant of the easement independently violated section 80.14 of the regulations and permitted remedial action by USFWS, the failure to seek remedies  would be reviewable under NEPA only where there is an enforceable duty to act, 40 C.F.R. § 1508.18, and as already explained, no duty exists under the Wildlife Restoration Act regulations.  See also Ramsey v. Kantor, 96 F.3d 434, 445 (9th Cir. 1996); State of N.J., Dep't of Envtl. Prot. & Energy v. Long Island Power Auth., 30 F.3d 403, 418 (3d Cir. 1994).

NEPA cannot be used to make indirectly reviewable a discretionary decision not to take an enforcement action where the decision itself is not reviewable under the APA or the substantive statute.  "No agency could meet its NEPA obligations if it had to prepare an environmental impact statement every time the agency had power to act but did not do so."  Defenders of Wildlife v. Andrus, 627 F.2d 1238, 1246 (D.C. Cir. 1980); accord Greater Yellowstone Coal. v. Tidwell, 572 F.3d 1115, 1123 (10th Cir. 2009).

Plaintiffs' second route to identify a major federal action is their claim that a "partnership" existed between the federal and state governments which transformed the state agency's

-13-

conveyance of an easement in real property owned by the state into a federal action. Such partnerships may exist in certain circumstances where the federal government funds a joint or state initiative or where federal and state components of a project are interdependent or where federal approval is given without NEPA compliance. 40 C.F.R. § 1508.18 (2011); Mayaguezanos, 198 F.3d at 301-02. The circuit decisions are not all in accord,[3] but no indicia of the requisite partnership are present here.

In this instance, the federal government funded the state's purchase of the property, but it neither funded nor approved the later grant of any of the easements. USFWS may have the power to withhold future funding from the state if the easement violated the regulations and the state does not remedy the violation, 50 C.F.R. § 80.14 (2010), but (to repeat) this power is discretionary. As we conclude that there is no reviewable federal action, neither the federal nor the state officials can be held liable for violating NEPA, as a major federal action is a prerequisite for either.

Finally, plaintiffs allege in some detail that the grant of the 2005 easement violated provisions of state law and say that the district court had supplemental jurisdiction to resolve those

---

[3]Compare Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1397 (9th Cir. 1992), and Silva v. Romney, 473 F.2d 287, 289-90 (1st Cir. 1973), with S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 331 (4th Cir. 2008), and Karst, 475 F.3d at 1297-98.

-14-

claims and invalidate the easement.  As we agree with the district court's dismissal of the federal claims in this suit, there is no abuse of discretion in its decision to decline to exercise supplemental jurisdiction over the remaining state law claims. See, e.g., Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 190-91 (1st Cir. 2011).

**Affirmed.**