Filed 9/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE LAKE NORCONIAN CLUB FOUNDATION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Defendant and Appellant,<br><br>CITY OF NORCO,<br><br>    Real Party in Interest. | A154917<br><br>(Alameda County<br>Super. Ct. No. RG1478503) |

The Lake Norconian Club Foundation (the foundation) appeals the denial of its petition for writ of mandate alleging that the California Department of Corrections and Rehabilitation (the department) failed to comply with the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq.,[1] by allowing the "demolition by neglect" of the Lake Norconian Club, a former hotel owned by the department and listed on the National Register of Historic Places. The foundation contends the department's "decision not to repair the historic hotel roof in the face of imminent El Niño rains in 2014" was a "project" requiring preparation and certification of an environmental impact report (EIR). The trial court concluded that the failure to seek or allocate funding to maintain the former hotel was a project, but that the foundation's petition was barred by the statute of limitations. We affirm the judgment denying the petition on the ground that the department's inaction is not a project subject to CEQA.

---

[1] All further statutory references are to the Public Resources Code unless otherwise noted.

1

**Factual and Procedural Background**

The former hotel currently sits unoccupied on the grounds of a medium-security prison owned and operated by the department. When first opened in 1929, the hotel was a luxury resort catering to Hollywood stars and sports celebrities. The interior of the Spanish Revival-style building contains Heinsbergen murals, stenciled ceilings, exquisite tile, and special wrought-iron light fixtures. In 1941, following the depression and with the advent of World War II, the hotel was closed and the building transferred to the United States Navy. The building was used as a military hospital until 1962, when it was transferred to the State of California. Since 1963, the department has operated a prison adjacent to the former hotel. The hotel building first served as a drug rehabilitation facility and later housed the prison's administrative offices. In 2002, the department moved its staff from the building and offered to donate it to the City of Norco (the city). The city, however, was unable to satisfy the conditions of transfer and the property has remained under the state's ownership.

In 2012, the Legislature enacted Senate Bill No. 1022 which, among other things, required the department to close the prison adjacent to the former hotel no later than December 31, 2016. (Stats. 2012, ch. 42, § 15.) In June 2013, the department published a draft EIR analyzing, among other things, the impacts on the former hotel of the prison's closure. The EIR indicated that there was no funding for repair or rehabilitation of the building "in light of other [department] maintenance and repair priorities," that it was not feasible for the department to undertake any repairs, and that "[c]ontinued deterioration is therefore expected." In September 2013, the Legislature passed legislation rescinding closure of the prison. (Stats. 2013, ch. 310, § 21.) The final EIR was certified in October 2013. The response to comments in the final EIR indicated that, although the prison would not be closed, the department nevertheless would not be able to repair or maintain the former hotel due to inadequate funds and higher, mission-critical maintenance needs and other priorities.

After its formation in 2006, the foundation repeatedly encouraged the department to perform necessary maintenance on the building. Emails exchanged between the

foundation and the department between May and October 2014 demonstrate continued efforts to address the needed repairs. On October 15, the department emailed the foundation inquiring what its "next steps" would be to explore repair options for the hotel roof. On October 28, the foundation replied through its attorney, formally requesting that the department undertake repairs and corrective measures to repair the roof and maintain the vulnerable resources on the historic site that were deteriorating from the department's neglect.

On November 17, 2014, the foundation filed the present petition. The petition alleges, "The department and its director have and continue to abuse their discretion and fail to act in the manner required by law in ongoing demolition by neglect of the Lake Norconian Club. Years of neglect and lack of security have left gaping holes in the club roof and extensive damage from wildlife and water intrusion. The willful, ongoing failure to maintain and protect the historic club is a continuous discretionary action with significant environmental impacts. . . . The department's *de facto* issuance of ongoing demolition permits is a precommitment to a CEQA project that cannot lawfully be considered for approval or implementation without first preparing and certifying an EIR to consider impacts and alternatives." The foundation does not allege that any permits for the repair, maintenance or demolition of the property were issued. To the contrary, it asserts the failure to maintain the property is the equivalent of issuing a demolition permit.

In October 2015, the foundation moved for injunctive relief, requesting that the court order the department to take "all immediate action necessary" to protect the hotel from 2015 winter rains. The court ordered the department "to permit [the foundation] and the city . . . prompt and reasonable access to the hotel for the purpose of permitting [the foundation] and the city . . . to maintain and preserve the hotel," but the foundation and the city were to bear all costs of maintenance, subject to reimbursement by the department if the foundation ultimately prevailed in the action.

In April 2018, the court issued an order denying the petition. The trial court concluded that the department's failure "to seek or allocate funding to preserve the hotel"

3

in the face of its knowledge that its failure to act would inevitably lead to the destruction of the historic resource was a project within the meaning of CEQA, but that the petition was untimely because the statute of limitations began to run with the certification of the 2013 EIR. Following the entry of judgment and the denial of its motion for a new trial, the foundation timely filed a notice of appeal. Thereafter, the department timely filed a notice of cross-appeal.

## Discussion

The foundation contends the trial court erred in holding its petition barred by the statute of limitations applicable to petitions alleging noncompliance with CEQA (§ 21167). In its cross-appeal, the department asserts the trial court erred in deeming the failure to act a project subject to CEQA. The department's contention need not have been raised by a cross-appeal, since it merely provides an additional argument in support of the judgment and seeks no additional relief. (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 924, fn. 56.) Nonetheless, we agree with the department that its failure to act does not constitute a "project," either in common parlance or as the term is used in CEQA.

CEQA requires a governmental agency to "prepare, or cause to be prepared by contract, and certify the completion of, an environmental impact report on any *project* which they propose to carry out or approve that may have a significant effect on the environment." (§ 21100, subd. (a).) "CEQA and its implementing administrative regulations . . . establish a three-tier process to ensure that public agencies inform their decisions with environmental considerations. [Citation.] The first tier is jurisdictional, requiring that an agency conduct a preliminary review to determine whether an activity is subject to CEQA. [Citations.] An activity that is not a 'project' as defined in the Public Resources Code (see § 21065) and the CEQA Guidelines (see [Cal. Code Regs., tit. 14,] § 15378) is not subject to CEQA." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com*. (2007) 41 Cal.4th 372, 379-380, fn. omitted.) "Whether an activity constitutes a project subject to CEQA is a categorical question respecting whether the activity is of a

4

general kind with which CEQA is concerned, without regard to whether the activity will actually have environmental impact." (*Id.* at p. 381.)

CEQA defines a "project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] (a) An activity directly undertaken by any public agency. [¶] (b) An activity undertaken by a person which is supported, in whole or in part, through contracts, grants, subsidies, loans, or other forms of assistance from one or more public agencies. [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065; see also *Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 106 [" 'project' refers to the *underlying activity* which may be subject to approval"].)[2] In construing the term "project," as with any provision of CEQA, the court should interpret it in such a manner "as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (Cal. Code Regs., tit. 14, § 15003, subd. (f); *Laurel Heights Improvement Assn. v. Regents of University of California* (1989) 47 Cal.3d 376, 390.)

The trial court concluded "[i]n view of the broad definition of project and the overriding goals of CEQA" that "a public agency's deliberate failure to take affirmative action generally may be deemed a CEQA 'project' at least where the agency knows that

---

[2] The CEQA Guidelines provide further: " 'Project' means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and that is any of the following: [¶] (1) An activity directly undertaken by any public agency including but not limited to public works construction and related activities clearing or grading of land, improvements to existing public structures, enactment and amendment of zoning ordinances, and the adoption and amendment of local General Plans or elements thereof pursuant to Government Code Sections 65100–65700. [¶] (2) An activity undertaken by a person which is supported in whole or in part through public agency contracts, grants, subsidies, loans, or other forms of assistance from one or more public agencies. [¶] (3) An activity involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Cal. Code Regs., tit. 14, § 15378, subd. (a).)

the consequence of its failure to act is tantamount to destruction of an historical resource." The court found that the department's decision not "to seek or allocate funding to preserve the hotel" as evidenced by the 2013 EIR was a project subject to CEQA. However, the court rejected the foundation's broader assertion that the department's "failure to engage in routine maintenance or mere inaction" constituted a project. It explained that "CEQA is concerned with projects that would result in a change from the baseline. A public agency's decision to not take action and thereby maintain the environmental baseline consistent with the existing levels of wear and tear would therefore not be a CEQA project because by definition it would not 'cause either a direct physical change in the environment or a reasonably foreseeable indirect physical change in the environment.' "

Despite the trial court's favorable ruling in this respect, the foundation contends the trial court improperly viewed the scope of the project as limited to the failure to seek funding for the necessary repairs. It asserts that the department's "decision not to repair the historic hotel roof in the face of imminent El Nino rains in 2014" is a project that requires compliance with CEQA. The foundation argues that "an agency's demolition by neglect cannot be excused from CEQA review when it is well-settled that the same agency *could not* overtly create the same result by issuing a demolition permit or equivalent approval sans CEQA." It continues, "Historic landmarks are part of the protected CEQA environment . . . . When owned by a public agency, maintenance of such natural treasures is the agency's recognized mandatory duty." The decision to do nothing and allow an historic building to fall into disrepair is, the foundation argues, an activity directly undertaken by an agency.

The department, on the other hand, argues that under the plain language of the statute, "only affirmative agency 'activities' that are 'directly undertaken' by the agency fall within the scope of the statutory language." In fact, each of the alternatives in the statutory definition of what constitutes a project begins with "an activity." In contrast, the department argues, "agency inaction (in this case, failure to maintain a historic resource) inherently cannot constitute 'an activity directly undertaken by [a] public agency.' " The

6

department argues that interpreting "project" to include inaction would "lead[] to arbitrary and unreasonable consequences and would be practically impossible to apply and enforce" because both agencies and the public "would be unable to determine when ongoing agency inaction would ripen into a 'project' (or rise to the level of an agency decision to carry out or approve that project)." (See *Martin v. City and County of San Francisco* (2005) 135 Cal.App.4th 392, 402 ["CEQA is not to be stretched beyond the 'reasonable scope of the statutory language,' " and must "receive a practical, commonsense construction."].)

We agree that the failure to act is not itself an activity, even if, as may commonly be true, there are consequences, possibly including environmental consequences, resulting from the inactivity. The preparation of the 2013 EIR, precipitated by an express decision to close the prison adjacent to the former hotel, unquestionably was an activity and therefore a project subject to CEQA. However, the continuing failure to make repairs is no such activity and the issues presented by application of the statute of limitations to such a failure well illustrates the unworkability of deeming the inactivity a project. When would the limitations period commence? As the foundation acknowledges, "[t]he record documents many more than 180 days—indeed years—of discussions, correspondence, and documents relating to [the department's] long-term failure to maintain the landmark hotel after its closure . . . . [¶] . . . [¶] The record reflects ongoing consideration of mothballing the hotel, sale to the City of Norco, declaring the hotel surplus property, and various plans and political action to move the adjacent prison that would in turn open up development opportunities for the hotel." The trial court undoubtedly was correct that in issuing the 2013 EIR the department expressly indicated its decision not to expend funds on the repair or maintenance of the former hotel, so that if that decision (as distinguished from the decision to close the prison) were deemed a project, the limitations period would have run by the time this action was filed. But as the foundation recognizes, the inactivity

7

in fact began much earlier, and no particular date can be assigned to the failure to persuade the department to change its decision after issuance of the EIR.[3]

As the parties and the trial court observed, no California case has considered whether demolition by neglect, or an agency's failure to act, may be considered a project under CEQA. Federal courts, however, have addressed the issue in a related context.[4] Under NEPA, federal agencies are required "to include in every recommendation or report on proposals for legislation and other *major Federal actions* significantly affecting the quality of the human environment, a detailed statement by the responsible official on—[¶] (i) the environmental impact of the proposed action." (42 U.S.C. § 4332(C), italics added.) Similar to "projects" under CEQA, federal "actions" include "activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies; new or revised agency rules, regulations, plans, policies, or procedures; and legislative proposals." (40 C.F.R. § 1508.18(a).) Federal courts have repeatedly rejected the argument that an agency's inaction amounts to an action under the federal regulation. (See *Defenders of Wildlife v. Andrus* (D.C. Cir. 1980) 627 F.2d 1238, 1244 [Secretary of the Interior had no obligation to prepare an environmental impact statement concerning his discretionary decision not to exercise

---

[3] To be clear, we conclude that even if the failure to maintain or to allocate funds for the maintenance of the hotel were deemed a project, we agree with the trial court that the foundation's petition would be barred by the statute of limitations. (§ 21167, subd. (a).) There is no doubt that the decision not to expend funds on repair was made at least by 2013, no matter how many times the decision may have been reaffirmed.

We note that after this case was submitted at the conclusion of oral argument, letter briefs further arguing the statute of limitations issue were improperly submitted without leave of court and in violation of California Rules of Court, rule 8.200(a)(4). The letters were noted as received but not filed and have not been considered.

[4] Recognizing that CEQA was modeled on the National Environmental Policy Act of 1969 (NEPA) (42 U.S.C. § 4321 et seq.), courts have " 'consistently treated judicial and administrative interpretation of the latter enactment as persuasive authority in interpreting CEQA.' " (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 565, fn. 4; see also *County of Inyo v. Yorty* (1973) 32 Cal.App.3d 795, 807 [NEPA definitions are relevant in construing the meaning of "project" under CEQA.].)

power to preempt state wildlife management programs.]; *Minnesota Pesticide Information and Educ. v. Espy* (8th Cir. 1994) 29 F.3d 442, 443 [Forest Service decision to exclude herbicides as a method of vegetation control does not trigger NEPA's requirements that an environmental impact statement be prepared.]; *Mashack v. Jewell* (D.C. 2016) 149 F.Supp.3d 11, 28 [Park Service decision not to seek a new concessioner after expiration of temporary concessions contract "is not an 'action' subject to NEPA's environmental impact analysis requirements."].) As the court explained in *Defenders of Wildlife v. Andrus*, *supra*, 627 F.2d at page 1246, "No agency could meet its NEPA obligations if it had to prepare an environmental impact statement every time the agency had power to act but did not do so." (See also *Minnesota Pesticide Information and Educ., supra*, at p. 443 [argument that NEPA applies to decision not to use herbicides "trivializes NEPA by seeking to implicate its mandate in everyday decisions regarding agency functions and operations instead of to 'major Federal actions' as called for by the statute"]; *WildEarth Guardians v. U.S. E.P.A.* (10th Cir. 2014) 759 F.3d 1196, 1209 [expanding the scope of what constitutes an "action" to include inaction "would hamstring government regulation in general and would likely impede rather than advance environmental protection"].)

Unlike CEQA, the federal NEPA guidelines also define federal "actions" as including "the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts or administrative tribunals under the Administrative Procedure Act or other applicable law as agency action." (40 C.F.R. § 1508.18.) Applying this definition, the court in *Sierra Club v. Hodel* (10th Cir. 1988) 848 F.2d 1068, 1090-1091, overruled on different grounds by *Los Ranchos De Albuquerque v. Marsh* (10th Cir. 1992) 956 F.2d 970, held that where an agency had a mandatory duty under a federal statute to regulate federally protected wilderness study areas so as to prevent unnecessary environmental degradation, its failure to act was an "action" under NEPA. (Accord *Scarborough Citizens Protecting Res. v. U.S. Fish and Wildlife Svc.* (1st Cir. 2012) 674 F.3d 97, 102 [agency's failure to act "would be reviewable under NEPA only where there is an enforceable duty to act"].)

9

Neither CEQA nor its implementing regulations include a similar definition of a "project." Nonetheless, assuming without deciding that a project for purposes of CEQA may include an agency's failure to act when it has a mandatory duty to do so, the department has no such duty to maintain the former hotel. In *City of Marina v. Board of Trustees of California State Univ*ersity (2006) 39 Cal.4th 341, 360-361, cited by the foundation, the court held that CEQA imposes on public agencies a duty to " 'mitigate or avoid the significant effects on the environment of projects that it carries out or approves whenever it is feasible to do so.' " But the court did not hold that an agency has an independent mandatory duty to maintain historic property in its possession if not engaging in an activity that constitutes a project.

The foundation has not cited, and we have not identified, any statute that requires the department to maintain or repair the former hotel at issue in this case. Section 5024, cited by the foundation in its writ petition, requires only that the department "formulate policies to preserve and maintain, when prudent and feasible, all state-owned historical resources under its jurisdiction listed in or potentially eligible for inclusion in the National Register of Historic Places." Under section 5024.5, when an "action" proposed by a state agency will have an adverse effect on a listed historical resource, the state agency is required to "adopt prudent and feasible measures that will eliminate or mitigate the adverse effects." The trial court denied the foundation's request to compel the department to act under section 5024.5 on the ground that section 5024.5 "applies only to action and does not apply to inaction" and on appeal the foundation does not dispute that ruling. Nothing in section 5024 or 5024.5 imposes on the department a mandatory duty to maintain the former hotel. (See also Stats. 2008, ch. 532, § 3 [repealing Government Code section 11011.2, which required a state agency to maintain property declared as surplus for up to one year].) Were there a statute directing the department to maintain or repair the former hotel, the failure to do so would be correctible by a writ of mandate. But absent any such statutory duty, the department's failure to act cannot be deemed a project or challenged for noncompliance with CEQA.

For this reason, the foundation's petition was correctly denied.

10

## Disposition

The judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

A154197

11

Trial court:                                Alameda County Superior Court

Trial judge:                                Honorable Brad S. Seligman

Counsel for plaintiff and appellant:        Susan Brandt-Hawley

Counsel for defendant and appellant:        Xavier Becerra, Attorney General,
                                            Daniel A. Olivas, Senior Assistant Attorney General,
                                            David G. Alderson, Supervising Deputy Attorney General,
                                            Tara L. Mueller, Deputy Attorney General

A154197